IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CALVIN ALPHONSE LEE, #152056,    )
                                 )
              Plaintiff,          )
                                 )
vs.                              )    CIVIL ACTION NO.
                                 )
LEVAN THOMAS, et al.,            )    2:08-CV-018-WKW
                                 )
              Defendants.         )

## ADOC DEFENDANTS' SUPPLEMENTAL
## SPECIAL REPORT TO THE AMENDED COMPLAINT

Come now the named Alabama Department of Corrections Defendants, by and through the undersigned counsel, and file this supplemental special report to the amended complaint as follows:

## PLAINTIFF'S AMENDED ALLEGATIONS

The Plaintiff's amended complaint against the ADOC Defendants alleges that his constitutional due process rights have been violated by the Defendants, specifically that Warden Thomas, Lt. Hicks, and Sgt. Parrish violated his due process rights in a disciplinary he received for Rule Violation # 53, Inciting to Riot.

## DEFENSES

The Defendants allege that they have not violated the Plaintiff's constitutional rights, and demand the strict proof thereof.

The Defendants allege that the Plaintiff has failed to state a claim upon which relief

can be granted.

The Defendants allege that they are entitled to qualified immunity against the claims of the Plaintiff.

The Defendants allege that they are entitled to absolute immunity against the claims of the Plaintiff.

The Defendants plea the general defense.

The Defendants allege that the Plaintiff has failed to state a claim upon which a 42 U.S.C. §1983 action can be maintained.

The Defendants allege that the claims of the Plaintiff are barred pursuant to the Prisoner's Litigation Reform Act.

The Defendants allege that the Plaintiff's claims against the Defendants are moot in that, he has been released from ADOC custody.

The Defendants reserve the right to amend their defenses, including additional affirmative defenses, upon the receipt of information through discovery and otherwise.


## STATEMENT OF FACTS

On November 16, 2007, First Shift ordered all the inmates onto the exercise yard so that the facility could be cleaned. While on the exercise yard Inmate Lee tried to get the other inmates to refuse to go outside on the exercise yard and to demand to see the Warden. As a result of this action, Inmate Lee was issued a disciplinary for Rule Violation #53 on November 19th. Inmate Lee received his disciplinary on November 30th at 1:00 pm at the

Kilby Correctional Facility. The Hearing Officer, Sgt. Parrish, found Inmate Lee guilty and recommended sanctions of thirty (30) days loss of store, visitation, and telephone privileges. (Attachment to the affidavit of Nathan Parrish). Inmate Lee was released from ADOC custody on January 24, 2008.


## ARGUMENT

First and foremost, this matter is moot. There is no relief available for an alleged due process of a disciplinary hearing since the Plaintiff has been released.

Secondly, the Defendants would allege that the law is well established that inmates who do not claim, nor have, a liberty interest concerning sanctions suffered as a result of a disciplinary are not entitled to due process. Sandin v. Conner, 115 S.Ct. 2293 (1995) applies. Also see Wolff v. McDonnell, 418 U.S. 539 (1974) and Superintendent v. Hill, 472 U.S. 445 (1985). No good time was taken from Inmate Lee.

Thirdly, this issue is normally raised in a petition for writ of habeas corpus in State Court prior to proceeding in Federal Court. There is no evidence that the Plaintiff has raised this issue in State Court and exhausted all of his state remedies.

Lastly, the Defendants would argue that this action is due to be dismissed and summary judgment granted under the Prison Litigation Reform Act (PLRA), specifically under 42 U.S.C.A. §1997e (e). In Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997), the Court held that the inmate did not raise a valid Eighth Amendment claim because he did not have the requisite physical injury under the PLRA.

Wherefore the premises considered, the Defendants pray this Court to grant summary judgment in their favor.

Respectfully submitted,

Kim T. Thomas
General Counsel


/s/ Albert S. Butler
Albert S. Butler (BUT016)
Assistant General Counsel


ADDRESS OF COUNSEL:
Alabama Department of Corrections
Legal Division
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130-1501
(334)353-4859

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Calvin A. Lee
c/o Linda Rodgers
1461 Linewood Drive
Mobile, Alabama 36603

Paul M. James
Rushton, Stakely
Attorney for PHS
P. O. Box 270
Montgomery, AL  36101-0270

Philip G. Piggott
Starnes & Atchison
Attorney for CMS
P. O. Box 598512
100 Brookwood Place
Birmingham, Alabama 35259-8512

on this the 3rd day of September, 2008.

_/s/Albert S. Butler-_
Albert S. Butler (BUT016)
Assistant General Counsel

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee, #152056     )
     )
    PLAINTIFF,     )
     )   CIVIL ACTION NO. 2:08-CV-18-WKW
Levan Thomas, et al.,     )
     )
    DEFENDANTS.     )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Nathan Parrish, who being known by me and first duly sworn, deposes and says under oath as follows:

My name is Nathan Parrish and I am presently employed as a Correctional Sergeant with the Department of Corrections, at Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age. By my signature below, I certify that the statements therein are true to the best of my knowledge.

In his complaint, inmate Calvin Lee, BM/152056, alleges that his rights were violated when two other inmates were allowed to go unpunished after the inmates, inmate Rico Gibson, BM/243851, and inmate Brandon Williams, BM/234998, received disciplinaries. Inmate Lee claims that these two inmates were issued disciplinaries and yet, they were not prosecuted. Inmate Lee further alleges that he received a disciplinary for violation of Rule #53, Inciting to Riot, by methods of conspiring and scheming; thus violating his (inmate Lee's) Constitutional Rights. These allegations are false.



I know nothing about the other two inmates named in this suit. I was not the Arresting Officer when neither inmate was written up, nor do I have any knowledge of the two receiving disciplinaries that were not prosecuted.

On November 30, 2007, I was the Hearing Officer for the disciplinary inmate Lee received. In accordance with Administrative Regulation #403, "Disciplinary Hearing Procedures for Major Rule Violations," I conducted a disciplinary hearing in which inmate Lee was charged with violation of rule #53, Inciting to Riot. After reading that inmate Lee was on the Exercise Yard, chanting and encouraging other inmates to demand to see the Warden in reference to Lt. Janet Hicks, I checked the paperwork to ensure that inmate Lee's rights were not violated. The incident occurred on November 16, 2007. Inmate Lee was given notice of the hearing on November 19, 2007. Inmate Lee was allowed to list witnesses and even though his witnesses were not present, statements were attached to the disciplinary and inmate Lee had no questions for his witnesses; therefore the statements were considered when I rendered my findings of fact. Inmate Lee's questions for the Arresting Officer were also considered. I listened to testimony from inmate Lee and Lt. Hicks. I then rendered my findings and the basis for my findings (see attached disciplinary #FLWRC 07-548). Inmate Lee's witness statements were considered. Both of the witness statements indicated that inmate Lee was, in fact, on the Exercise Yard making statements that he wanted to see the Warden. Lt. Hicks testified that she was informed by other employees and inmates that inmate Lee was, in fact, out on the yard demanding to see the Warden. There was a large gathering and inmate Lee was found guilty of said charges. All was done in accordance to procedure.

At no time did I violate inmate Lee's Constitutional Rights. Inmate Lee was charged with violating a rule, he was charged and then tried. Contrary to what inmate Lee thinks, I was impartial, I listened to the testimony of facts and rendered a fair and impartial decision. Upon completion of the hearing, the disciplinary was approved and inmate Lee received his final copy on December 6, 2007. All was done in accordance with Administrative Regulation #403.

My actions were within the course and scope of my duties as a Correctional Sergeant and as a Hearing Officer. This statement is true and correct.

Nathan Parrish, Correctional Sergeant

Frank Lee Work Release Center

STATE OF ALABAMA)
ELMORE COUNTY     )

Sworn to and subscribed before me and given under my hand and official seal this the ___31st___ day of __January__, 2008.

Notary Public

7-25-2011

My Commission Expires

ALDOC Form 225B

*FLWRC 07-548*

## ALABAMA DEPARTMENT OF CORRECTIONS
### DISCIPLINARY REPORT

1. Inmate: **Calvin Lee**                Custody: **Minimum**        AIS: **BM/152056**

2. Facility: **FRANK LEE YOUTH CENTER**

3. The above named inmate is being charged by **Lt. Janet Hicks** with violation of rule number **53** specifically **Inciting to Riot** from regulation # **403** which occurred on or about **November 16**, 20**07** at (time) **6:50 a.m.** (am / pm), Location: **FLWRC – Exercise Yard**. A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: **After being ordered to report to the Exercise Yard, for the cleaning of the center, you, inmate Calvin Lee, BM/152056, were observed by an employee shouting, "We want to see the Warden, Lt. Hicks can't ship all of us," as a group of inmates surrounded you. Also several inmates have reported to Lt. Hicks that you were going from dorm to dorm, and that you were out on the yard trying to get any inmate who would listen to demand to see the Warden, in reference to Lt. Hicks**.

    _11/19/07_                           _[signature]_
    Date                                 Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _19_ day of _Nov_, 20_07_ at (time) _12:46_ (am/pm).

    _[signature]_                        _Refused To Sign_ _[signature]_
    Serving Officer / Signature / Rank   Inmate's Signature / AIS Number

6. Witnesses desired?    NO _____        YES _Calvin Lee_
                            Inmate's Signature             Inmate's Signature

7. If yes, list: _Carlton Cook W/175201 & Johnny Dobbins B/133351_

8. Hearing Date _11/30/07_    Time _1.50 pm_        Place _Kilby_

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is / is not) capable of representing himself.
    _[signature]_
    Signature / Hearing Officer

11. Plea: _[signature]_ Not Guilty _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _[signature]_
    Signature / Hearing Officer

[ENTERED stamp]    _12-6-07_

13.    Arresting Officer's testimony (at the hearing):    I want to start out by saying, this inmate worked for me. I've
Never had any problems with him. The day this happened, I had no idea it happened. The Warden called me
and questioned me. I learned that inmate Lee had been out on the yard shouting he wanted to see the Warden.
Someone had told him that inmate Lee was cursing at me and that he was inciting a riot. When he asked me if
I was writing him up, initially I said no and suggested that who ever told him this should write him up. It wasn't
until the next day when inmates came to me and told me what he had done. It was determined then that (cont)

14.    Inmate's Testimony:    See the attached statement. I went on the yard and said I wanted to see the Warden. I
Wanted to explain to him that I was wet and cold. Everybody else was saying they wanted to see the Warden.
Sgt. Grays came around the building and told everybody that they weren't going to get anywhere like they were
Acting. She told us we were going to see the Warden. Q: Why were you wet? A: I work on Recycle. I was
Seated at the table when Lt. Hicks entered the dorm, looking for an article in the newspaper. I was at the (cont)

Witness:    Johnny Dobbins, #133351    Substance of Testimony:    See attached statement

Witness:    Carlton Cook, #175201    Substance of Testimony:    See attached statement

Witness:    N/A    Substance of Testimony:

15.    The inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

_____
Signature / Hearing Officer

16.    The following witnesses were not called  -  Reason not called

1.  N/A _____    _____

2.  _____    _____

3.  _____    _____

17.    After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)

The Hearing Officer finds that:    On November 16, 2007, inmate Calvin Lee, BM/152056, was observed on the yard, shouting he wanted to see the Warden after being run outside for the cleaning of the center.  Several inmates were gathered around him and they too began to shout they wanted to see the Warden and had to be quieted or quelled by Sgt. Grays.  Such action as described in this case is not permitted at FLWRC and constitutes a violation of Rule #53, Inciting to Riot.

18.    Basis for Finding of Fact:    The Hearing Officer based his findings on the testimony of the Arresting Officer who stated that she had no idea what was going on at the time, it wasn't until she received a telephone call from the Warden that she learned that inmate Lee was on the yard, causing problems.  Also both witness statements note that inmate Lee was on the yard stating he wanted to see the Warden and several inmates were gathered.

19.    Hearing Officer's Decision:    __X__ Guilty    _____ Not Guilty

20.    Recommendation of Hearing Officer:  (30) days loss of store, visitation and telephone privileges.  Does not Earn GT. Refer to Classification for custody review.

_____
Signature / Hearing Officer

Sgt. Nathan Parrish
Typed Name and Title

21.    Warden's Action – Date  12/4/07

Approved  _____

Disapproved  _____

Other (specify)  _____

22.    Reason if more then 30 calendar days delay in action.  _____

23.    I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above Named inmate on this the  6th  day of  December  2007  at (time)  12 a.m. (am)/ pm).

_____        _____
Signature / Serving Officer / Title              Inmate's Signature and AIS Number  152056

FLYRC 07-548

## ALABAMA DEPARTMENT OF CORRECTIONS
### DISCIPLINARY REPORT (OPTIONAL)

Inmate Name /AIS Number    **Calvin Lee**        Incident Report No.   **FLYC 00-**

Facility :    **Frank Lee Youth Center**

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTION BY HEARING OFFICER (QBHO) TO ARRESTING OFFICER:   that inmate Lee was inciting to riot. We had never had a problem. The day before he was in the dining area with his newspapers. I ran him out that day. Q: Did you hear inmate Lee on the yard? A: No, didn't know anything about his actions until I was told by the Warden and several inmates I consider to be confidential informants. Q: Did he appear to be wet on the date of the incident? A: If he was wet, he would have told me he was and I would have allowed him to shower. He never said anything to me.

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO INMATE:   table in the back of dorm by the heater. Q: Is it your testimony that you were wet? A: Yes. Q: Did you inform Lt. Hicks that you were wet? A: No.

CONTINUED WITNESS TESTIMONY (QBHO): _____

CONTINUED FINDINGS OF FACTS: _____

CONTINUED BASIS FOR FINDING OF FACT: _____

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLWRC07-548

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLYC 06-** | |

| Date: | Type of Incident: |
|---|---|
| | |

Narrative Summary (Continued) Page No.

Nov. 25, 2007

I, JOHNNY DOBBINS, 133351, DOESN'T FEEL THAT INMATE KEVIN LEE WASN'T OR DIDN'T INCITED A RIOT DUE TO POINT HE WAS TRYING TO GET A POINT ACROSS THAT NEEDED TO BE ADDRESS TO THE WARDEN AND LT. HICK'S DUE TO THE POINT IT WAS HARSH TEMPERATURE'S OUTSIDE THAT WOULD MADE HIM SICK ALSO ANY ONE THE SAME WAY. IT WAS BELOW 35° DEGRESS AND LT. HICK'S KICK ALL THE WORK-RELEASE INMATE'S OUT THE DOOR SOME HAD GOT A JOB AT THE CHICKEN PLANT ONE INMATE WALKED UP TO HER AND SAID I GOT TO GO TO WORK AT 2:00 HER RESPONSE WAS "WELL YALL BE IN BEFORE 2:00 P.M." TO CONDEMED SOMETHING FROM HAPPENING, INMATE LEE AND OTHER'S SPOKE UP AT THE SAME TIME ABOUT THE SAME THING THEY WELL LT. HICK'S JUST PULL INMATE LEE WELL SINGLE HIM OUT NOBODY ELSE WHEN EVERYBODY WAS INVOLVED'S WAS QUICK TO SHIP HIM THEY SHOULD SHIP ALL OF US IF THAT WAS THE CASE. THE INCIDENT HAPPEN ON Nov. 16th 2007.

My CONCLUSION WORK-RELEASE IS A RIGHT NOT A PRIVELAGE WE AS INMATE'S WE AS WORK-RELEASE HAS EARNED OUR RIGHT TO BE HERE WE HAVE DID EVERYTHING THAT THE STATE HAS REQUIRE US TO DO AS WELL AS DID EVERY THING THEY HAD TOLD US TO DO IN ORDER FOR US TO GET BACK TO OUR FAMILY'S AND LT. HICK DID NOT LIKE THAT'S WHY THEY SHIP HIM.

THEY ARE USED TO A LEVEL 2 INSTEAD OF A LEVEL 1.

DATE BACK OF NOV. 16th 2007. IF IT SERVES ME RIGHT A RIOT PLOT'S TO TAKE OVER SOMETHING...

*Johnny Dobbins*

**ADOC Form 302-B – June 1, 2005**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLYRC07-548

## INCIDENT REPORT/DUTY OFFICER REPORT
### CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLYC 06-** | |

| Date: | | Type of Incident: |
|---|---|---|

Narrative Summary (Continued) Page No.

On friday 16-07, we were told to go out side, the same complaining some one, made statement, look at Lt Hicks, setting there with her coat on and sending us out in the cold. I went out and around side of B dorm, where the sun can hit you and the wind not so bad.

I sat down drinking coffee and smoking and four other guys who transferred here for work release who talking to each other about the cold and working different shifts and being put out in cold. One said he was going to get his Mom to call and complain to the warden.

Then I heard a bunch of noise on other side of A dorm and got up to see what was going on, a bunch of people were saying that they wanted to talk to the warden. Calvin was there saying I want to talk to the warden, I and some others went in the dining room area because some others were there. People were out side the door saying we want to see the Warden, Sgt Gray came in an told even one to settle down, that was no way to act to see the warden, she was going to call him. Lt Hicks came back told every one to go out side. There were about 20-25 people in the dining room (not yelling) When we went outside they were about 100-120 say they wanted to see warden. Calvin was saying he want to talk to the warden Sgt Burns and officer Wise came around from kitchen area and Sgt Gray, She told everyone to quite down that they were not going to get anywhere talking and acting the way they were, Everybody started quiting down. She said the warden was on his way to talk to everyone. While people were waiting they were talking about all the things they needed to bring to the warden's attentions. Calvin walked off to his self and I walked over and ask him what was wrong. He told me he was behind the kitchen and got soaking wet and Lt, Hicks told him to go out side and he told her he was soaking wet and it was cold. He said he wanted to talk to the warden. The count buzzer went off and Lt Hicks announce (Lock down) After they sent Calvin up front. Sgt Gray come to the shift office and was talking to people and I ask her to speak to the warden.

ADOC Form 302-B – June 1, 2005

She ask my name and said she would tell him, The warden come to the back and I ask him could I talk to him, he said he was in conference. OVER→

Question's For The Disciplinary Hearing

1. I was not attempting or has ever attempted to incite a Riot.

2. LT. Hick's don't I Colvin A. Lee, both had everytime something is wrong or I have a legitimate Complaint. Sometimes

3. LT. Hick's have you had any problem's with Me Colvin A. Lee being Cooperative in the past 19 month's that I have been assigned at Frank Lee Work-Release. Never had a problem

4. LT. Hick's how would you describe my Conduct had this Accusation not been mentioned. Good

5. Lt. Hick's am I a threat to you or any other Officer at Frank Lee Work Release. Never had a problem never felt threatened.

Statement of LT. Hick's my Opinion of you as a D.O.C. Official is that you are the best one at Frank Lee Work-Release, I think highly of you. And nothing is going to change that. It troubles me, that you would bring these charges of this nature against me. Even through I have implicated you in a 1983 Complaint. In all honesty the Complaint wasn't filed to harm you. But done in hopes of getting higher Authorities. To issue Memo's and Regulation's. For you to have as a guide line, so that you won't have to make judgement calls on critical issue's probing to the inmates, here at Frank Lee. It's been an Honor working so closely with you, This is my life at risk here. My mother and Father's life, my Children and wife. All which is in your hand, I trust that you will do what is desired of God.

6. LT. Hick's this is all just a misunderstanding that in time will work itself out. Trust me. I am not fighting you but only attempting to reason with you.

Question for The Disciplinary Hearing

7. LT. Hick's Frank Lee Work-Release is operating as 3 different type Institution's isn't it. Work-Release, Honor-Camp, level of feeding and scrub. Its a level 1, 2 4/ during feeding never honor camp.

8. LT. Hick's there isn't any Memo's or Regulation's governing exactly what exact procedure's to take, regarding certain situation's. Is this true And because of the different issue presented daily, It is extremely stressful on the D.O.C. Staff. Would you say because of all the confusion and Chaos any incident out of character, Could be easily blown out of proportion or needed to be determined as something that its not. On this particular day, I pulled Johnston & he scled rcm then Cut & Cursse up...

9. LT. Hick's on November 16, wasn't you more disappointed with me, because of my complaining. And wouldn't you say that maybe act of anger, rather than the Inciting a Riot charge. You leveled these charges against me. I was instructed to write you up for 453

10. Due Process Law's require that one accused has a Constitutional Right to face all his accuser's. On The Disciplinary Report LT. Hick's states that an Employee observed me inciting a Riot. Who is that Employee and I would Like a Sworn Affidavit of this statement to this Report. Also the same Sworn Affidavit of the names of the Inmate's mentioned in the disciplinary Report. Irrelevent, we don't give names of informants.

11. I have two (2) witness on my behalf, that I would like the Hearing Board to hear, and consider their statement as to what transpired November 16, 2007 (2) Callan Cook W/175201, (3) Johnny Dobbins B/133551

12. LT. Hick's how many inmates did you hear or see shouting that they wanted to see the warden. None

13. Request to Amend to These Questions at a later time.

# Certificate of Service

I do hereby certify that a copy of question's and a statement of Explanation was served on the Disciplinary Hearing Board to be Retained on Record This was done the _____ Day of _____ 2007.

Respectfully Submitted,

Kirby Lee _____
P.O Box 150
Mt. Meigs, Al 36057

Also the Accused Calvin Lee Request that this hearing be postponed until the Court Grant a Writ of Testificandum, for the @ two witnesses to appear at the hearing.

The charge on citation of Rule 53 is without merit, Because to incite a Riot. This has to occur.

cite: I have to Arouse to action, stir-up. To provoke or urge on
incite: To Incite to anger. To stir up on purpose.
it: mean a wild or turbulent disturbance, created by a large number of people. (Law) A violent disturbance of the public peace, by three or more persons, assembled for a common purpose

Riot: is if 12 or more people unlawfully assemble and disturb the public peace. They must disperse upon proclamation or be guilty of felony — Read the Riot Act.

```
                          DISPLAY INMATE SUMMARY DATA        ** PRODUCTION **
  28/JAN/2008        10:36:08     CDSUM     513     L-ELLA        CDSUM01    604
-------------------------------------------------------------------------------
AIS: 00152056A  INMATE: LEE, CALVIN ALPHONSE               RACE: B  SEX:  M

INST: 050-CENTRAL RECORDS MONITOR           JAIL CR: 1345D DOB: 05/16/1956
SSN: 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 PAR CONS DT: 00/0000  CURR CUST: MIN2  CURR CUST DT:02/28/2006
ALIAS: LEE, C ALPHONZA                  ALIAS:
ADM TP: NEW COMMITMENT - SPLIT SENTEN  STATUS: SPLIT SENTENCE - REVOKED
INIT SENT DT:11/01/2004 ADM DT: 03/04/1997 DEAD TIME: 00Y 00M 00D
                                    N                                      TY
COUNTY        SENT DT    CASE   L CRIME                          TERM       PE
MOBILE       11/01/2004 004044 Y CRIMINAL MISCHIEF I        * 15Y00M00D    CS



                        NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 002DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 041TRANSFER RECORDS ON FILE.
INMATE HAS 00 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL   TERM   REV GOOD TIME  MIN REL DT  TOT GOOD TIME  SHORT DATE  LONG DATE
015Y 00M 00D   000Y 00M 00D   01/24/2008  008Y 01M 08D   01/24/2008  02/20/2016
```

```
                    CDIN     INMATE DISPLAY      28/JAN/2008    ** PRODUCTION **
  AIS: 00152056A    LEE, CALVIN ALPHONSE           R/S: BM      DOB: 05/16/1956
INST: 050 - CENTRAL RECORDS MONITOR              DORM: 00
 OFF: 121C - CRIMINAL MISCHIEF I                              NCIC OFF: 2999

  1. ADMIT     DT: 03/04/1997 08 COMMIT CNTY : 49 MBLE      MENTAL HEALTH: MH-0
  2. RELEASE   DT: 03/17/2003 23-ACT 754 OR PROBATION       JAIL CREDIT  : 1345
  3. SENTENCE  DT: 11/01/2004                               STAT CODE    : 48
  4. LONG RLS  DT: 02/20/2016  TIME SERVED : 006Y11M22D     YOUTH OFF    : A
  5. MIN RLS   DT: 01/24/2008  DEAD TIME   : 000Y00M00D     PR INC LOC   : 00
  6.                           TOT GT REC'D: 008Y00M28D     PRIM JURIS   : 0
  7. RECAPTURE DT:             TOT GT RVK'D: 000Y00M00D     SECURITY LVL : 2
  8. READMIT   DT: 11/01/2004  GT BALANCE  : 008Y00M28D     446 SENT/SERV: Y Y
  9. RETRO CIT DT:             TOTAL TERM  : 015Y00M00D     TRANSFER CNT : 41
 10. GEN PROG  DT: 08/23/2008                               DISCIP   CNT : 2
 11. TOLL      DT:             SERVING CASE: 1996 004044     DET/WAR  CNT : 0
 12. 446 CLASS DT: 11/01/2004  S I D  NBR  : 01071216       ENEMY    CNT : 1
 13. COMP      DT: 07/19/2005  R E D  NBR  : 000000         SPECIAL   ED : N
 14. LST TRAN  DT: 01/24/2008  S S N  NBR *: 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

 15. CURR CUST DT: 02/28/2006  CUST CODE   : 12 MIN2        CUST RETAIN  :
 16. PRES  HRG DT: 03/28/2007  PRES  PRL DT: 00/0000        PRES  HRG DEC: 09
 17. PRIOR HRG DT: 04/19/2006  PRIOR PRL DT: 04/2007        PRIOR HRG DEC: 02
     COMMENTS:                                                *PAGE* ARCH: N
```

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Calvin Alphonse Lee, #152056 | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION NO. 2:08-CV-18-WKW |
| Levan Thomas, et al., | ) |
| | ) |
| DEFENDANTS. | ) |

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Levan Thomas, who being known by me and first duly sworn, deposes and says under oath as follows:

My name is Levan Thomas and I am presently employed as a Correctional Warden II with the Department of Corrections, at Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age. By my signature below, I certify that the statements therein are true to the best of my knowledge.

In his complaint, inmate Calvin Lee, BM/152056, alleges that his rights were violated when two other inmates were allowed to go unpunished after the inmates, inmate Rico Gibson, BM/243851, and inmate Brandon Williams, BM/234998, received disciplinaries. Inmate Lee claims that these two inmates were issued disciplinaries and yet, they were not prosecuted. Inmate Lee further alleges that he received a disciplinary for violation of Rule #53, Inciting to Riot, by methods of conspiring and scheming; thus violating his (inmate Lee's) Constitutional Rights. These allegations are false.



Inmate Rico Gibson, BM/243851, received a disciplinary October 14, 2007, for violation of Rule #64, Possession of Contraband, after having a cellular telephone in his possession. Cellular telephones are not authorized at Frank Lee Work Release Center (FLWRC). The disciplinary #FLWRC07-524 (see attached copy) was served on October 15, 2007. In accordance with Administrative Regulation #403, "Disciplinary Hearing Procedures for Major Violations," the disciplinary hearing is to be conducted within ten (10) workings days after being served. Failure to conduct the hearing within the proper timeframe is a due process violation (see attached copy of AR #403). The only exception to this rule is the serving of a Rescheduling Notice, indicating that the hearing has been postponed. In the case of inmate Gibson, a Rescheduling Notice was not issued and the disciplinary was nol prossed by the Hearing Officer, Lt. Harold McCray. When I received the disciplinary, I immediately contacted the Hearing Officer to ascertain the reason the disciplinary was not held in a timely manner. The Hearing Officer informed me that the Arresting Officer, Officer Edward Easterling, was off and when he returned, the disciplinary was not held. Eventually, the time had run out. I did not accept this excuse and the Hearing Officer was reprimanded by his supervisor, the Captain of Security. I signed the disciplinary on January 7, 2008, approving the recommendation that the disciplinary be nol prossed due to time expiring on the disciplinary. This was not an intentional act by me or my staff.

Inmate Brandon Williams, BM/234998, did not receive a major disciplinary at FLWRC. I have reviewed his (inmate Williams') Institutional File and found that inmate Williams received two (2) Behavior Citations (see attached copies). Behavior Citations are minor disciplinary infractions that are issued by the Arresting Officer and the Shift

Supervisor determines what sanctions are to be imposed, if any.  No hearing is conducted.  The inmate is informed by the Shift Supervisor of the minor rule violation and of the sanctions being imposed after an investigation is conducted.  The Captain of Security and/or my designee approves, disapproves, increases or decreases the sanctions once he (the Captain, my designee) has been satisfied that the inmate in question has, in fact, committed a violation.  Major violations can be reduced to a Minor violation, but Minor violations cannot be increased to a Major violation.  All is done in accordance with Administrative Regulation #414, "Disciplinary Procedures for Minor Violations," (see attached copy of AR #414).  There was another incident at Draper Trade School that involved inmate Williams; however, no disciplinary action was taken against inmate Williams.

After reporting to work on the day in question and learning that inmate Lee was on the Exercise Yard, chanting and encouraging other inmates to demand to see me (Warden Thomas) in reference to Lt. Janet Hicks, the First Shift Supervisor, I telephoned Lt. Hicks and asked her about the incident.  At the time, Lt. Hicks did not know about the incident.  The incident occurred on November 16, 2007.  I summoned inmate Lee to my office and questioned him.  Inmate Lee denied the incident, stating that it was all a misunderstanding.  It wasn't until the next day that Lt. Hicks learned of the incident and initiated disciplinary action for violation of Rule #53, Inciting to Riot, against inmate Lee.  Disciplinary action can be initiated against an inmate within ten (10) calendar days of the incident.  Inmate Lee was given notice of the hearing on November 19, 2007.  Inmate Lee was then allowed to list witnesses.  Within ten (10) working days of the serving of the charges (excluding weekends and holidays), a Hearing must be held.  On

November 30, 2007, a hearing was held. The Hearing Officer, Sgt. Nathan Parrish listened to testimony from inmate Lee and Lt. Hicks. Inmate Lee's witness statements were also considered. Both of the witness statements indicated that inmate Lee was, in fact, on the Exercise Yard making statements that he wanted to see the Warden. Lt. Hicks testified that she was informed by other employees and inmates that inmate Lee was, in fact, out on the yard demanding to see the Warden. There was a large gathering on the Exercise Yard and inmate Lee was found guilty of the charges. The Hearing Officer (Sgt. Parrish) rendered his findings and the basis for his findings (see attached disciplinary #FLWRC 07-548). All was done in accordance to Administrative Regulation #403, "Disciplinary Procedures for Major Violations," (see the attached copy of AR #403). I reviewed the disciplinary and on November 30, 2007, I approved the disciplinary. Inmate Lee received a copy of the approved disciplinary on December 6, 2007. There were no due process violations. All was done within the timeframe outlined in AR #403.

At no time did I violate inmate Lee's Constitutional Rights, nor did I scheme or conspire with anyone in regards to inmate Calvin Lee. Inmate Lee was charged with violating a rule and then tried. Contrary to what inmate Lee thinks, inmate Lee was not singled out. Inmate Gibson's disciplinary was not prosecuted because of a due process violation, time ran out. Inmate Williams never received a major disciplinary while assigned to FLWRC.

This statement is true and correct.

Levan Thomas, Correctional Warden II

Frank Lee Work Release Center

STATE OF ALABAMA)
ELMORE COUNTY    )

Sworn to and subscribed before me and given under my hand and official seal this the
_____ day of February_____ , 2008.

_____
Notary Public

_____
My Commission Expires

ALDOC Form 225B

FLWRC 07-548

# ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1. Inmate: **Calvin Lee**          Custody: **Minimum**          AIS: **BM/152056**

2. Facility: **FRANK LEE YOUTH CENTER**

3. The above named inmate is being charged by **Lt. Janet Hicks** with violation of rule number **53** specifically **Inciting to Riot** from regulation # **403** which occurred on or about **November 16**, 20**07** at (time) **6:50 a.m.** (am / pm), Location: **FLWRC – Exercise Yard**. A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: **After being ordered to report to the Exercise Yard, for the cleaning of the center, you, inmate Calvin Lee, BM/152056, were observed by an employee shouting, "We want to see the Warden, Lt. Hicks can't ship all of us," as a group of inmates surrounded you. Also several inmates have reported to Lt. Hicks that you were going from dorm to dorm, and that you were out on the yard trying to get any inmate who would listen to demand to see the Warden, in reference to Lt. Hicks**.

_____11/19/07_____          _____
Date                                    Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the **19** day of **Nov**, 20**07** at (time) **12:46** (am/pm).

_____          Refused To Sign_____
Serving Officer / Signature / Rank          Inmate's Signature / AIS Number

6. Witnesses desired?     NO _____          YES _____
                          Inmate's Signature              Inmate's Signature

7. If yes, list: **Carlton Cook W/175201** & **Johnny Dobbins B/133351**

8. Hearing Date **11/30/07**     Time **1:50 pm**     Place **Kilby**

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (is/ is not) capable of representing himself.
_____
Signature / Hearing Officer

11. Plea _____ Not Guilty _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
_____
Signature / Hearing Officer

[ENTERED stamp]  12-6-07

Annex C to AR 403  (Page 1 of 5)

13.   Arresting Officer's testimony  (at the hearing):    I want to start out by saying, this inmate worked for me.  I've
Never had any problems with him.  The day this happened, I had no idea it happened.  The Warden called me
and questioned me.  I learned that inmate Lee had been out on the yard shouting he wanted to see the Warden.
Someone had told him that inmate Lee was cursing at me and that he was inciting a riot.  When he asked me if
I was writing him up, initially I said no and suggested that who ever told him this should write him up.  It wasn't
until the next day when inmates came to me and told me what he had done.  It was determined then that (cont)

14.   Inmate's Testimony:    See the attached statement.  I went on the yard and said I wanted to see the Warden.  I
Wanted to explain to him that I was wet and cold.  Everybody else was saying they wanted to see the Warden.
Sgt. Grays came around the building and told everybody that they weren't going to get anywhere like they were
Acting.  She told us we were going to see the Warden.  Q:  Why were you wet?  A:  I work on Recycle.  I was
Seated at the table when Lt. Hicks entered the dorm, looking for an article in the newspaper.  I was at the (cont)

Witness:    Johnny Dobbins, #133351            Substance of Testimony:    See attached statement

Witness:    Carlton Cook, #175201            Substance of Testimony:    See attached statement

Witness:    N/A                          Substance of Testimony:

15.   The inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

_____
Signature / Hearing Officer

16.   The following witnesses were not called   -  Reason not called

    1.  N/A _____    _____
    2.  _____    _____
    3.  _____    _____

17.  After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that:    On November 16, 2007, inmate Calvin Lee, BM/152056, was observed on
the yard, shouting he wanted to see the Warden after being run outside for the cleaning of the center.  Several
inmates were gathered around him and they too began to shout they wanted to see the Warden and had to be
quieted or quelled by Sgt. Grays.  Such action as described in this case is not permitted at FLWRC and consti-
tutes a violation of Rule #53, Inciting to Riot.

18.  Basis for Finding of Fact:    The Hearing Officer based his findings on the testimony of the Arresting Officer
who stated that she had no idea what was going on at the time, it wasn't until she received a telephone call from
the Warden that she learned that inmate Lee was on the yard, causing problems.  Also both witness statements
note that inmate Lee was on the yard stating he wanted to see the Warden and several inmates were gathered.

19.  Hearing Officer's Decision:    __X___ Guilty    _____ Not Guilty

20.  Recommendation of Hearing Officer:   (30) days loss of store, visitation  and telephone privileges.  Does not
Earn GT. Refer to Classification for custody review.

Signature / Hearing Officer
Sgt. Nathan Parrish
Typed Name and Title

21.  Warden's Action — Date  12/4/07
Approved
Disapproved
Other (specify)

22.  Reason if more then 30 calendar days delay in action.

23.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
named inmate on this the  __6th__ day of  __December__  20_07_ at (time)  _____ am. (am) / pm).

Signature / Serving Officer | Title                    Inmate's Signature and AIS Number  152056

Annex C to AR 403  (Page 3 of 5)

FLYRC 07-548

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT (OPTIONAL)

Inmate Name /AIS Number     **Calvin Lee**                    Incident Report No.    **FLYC 00-**

Facility :        **Frank Lee Youth  Center**

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTION BY HEARING OFFICER (QBHO) TO ARRESTING OFFICER:     that inmate Lee was inciting to riot.  We had never had a problem.  The day before he was in the dining area with his newspapers.  I ran him out that day.  Q:  Did you hear inmate Lee on the yard?  A:  No, didn't know anything about his actions until I was told by the Warden and several inmates I consider to be confidential informants. Q:  Did he appear to be wet on the date of the incident?  A:  If he was wet, he would have told me he was and I would have allowed him to shower.  He never said anything to me.

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO INMATE:     table in the back of dorm by the heater. Q:  Is it your testimony that you were wet?  A:  Yes.  Q:  Did you inform Lt. Hicks that you were wet?  A:  No.

CONTINUED WITNESS TESTIMONY (QBHO):

CONTINUED FINDINGS OF FACTS:

CONTINUED BASIS FOR FINDING OF FACT:

Annex C to AR403 (Page 4 of 5)

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLWRCC07-548

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:                   | Incident Number: | Class Code: |
|--------------------------------|------------------|-------------|
| FRANK LEE YOUTH CENTER         | FLYC 06-         |             |

| Date: | Type of Incident: |
|-------|-------------------|

Narrative Summary (Continued) Page No.

Nov. 25, 2007

I, JOHNNY DOBBINS, 133351, DOESN'T FEEL THAT INMATE KEVIN LEE WASN'T OR DIDN'T INCITED A RIOT DUE TO POINT HE WAS TRYING TO GET A POINT ACROSS THAT NEEDED TO BE ADDRESS TO THE WARDEN AND LT. HICK'S DUE TO THE POINT IT WAS HARSH TEMPERATURE'S OUTSIDE THAT WOULD MADE HIM SICK ALSO ANY ONE THE SAME WAY. IT WAS BELOW 35° DEGRESS AND LT. HICK'S KICK ALL THE WORK-RELEASE INMATE'S OUT THE DOOR SOME HAD GOT A JOB AT THE CHICKEN PLANT ONE INMATE WALKED UP TO HER AND SAID I GOT TO GO TO WORK AT 2:00 HER RESPONSE WAS "WELL Y'ALL BE IN BEFORE 2:00 P.M." TO CONDEMED SOMETHING FROM HAPPENING, INMATE LEE AND OTHER'S SPOKE UP AT THE SAME TIME ABOUT THE SAME THING THEY WELL LT. HICK'S JUST PULL INMATE LEE WELL SINGLE HIM OUT NOBODY ELSE WHEN EVERYBODY WAS INVOLVED'S WAS QUICK TO SHIP HIM THEY SHOULD SHIP ALL OF US IF THAT WAS THE CASE. THE INCIDENT HAPPEN ON Nov. 16TH 2007.

My CONCLUSION WORK-RELEASE IS A RIGHT NOT A PRIVELAGE WE AS INMATE'S WE AS WORK-RELEASE HAS EARNED OUR RIGHT TO BE HERE WE HAVE DID EVERYTHING THAT THE STATE HAS REQUIRE US TO DO AS WELL AS DID EVERY THING THEY HAD TOLD US TO DO IN ORDER FOR US TO GET BACK TO OUR FAMILY'S AND LT. HICK DID NOT LIKE THAT'S WHY THEY SHIP HIM.

THEY ARE USED TO A LEVEL 2 INSTEAD OF A LEVEL 1.

DATE BACK OF NOV. 16TH 2007. IF IT SERVES

ME RIGHT A ROOT PLOT'S TO TAKE OVER SOMETHING...

ADOC Form 302-B – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

FLYRC 07-548

## INCIDENT REPORT/DUTY OFFICER REPORT CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **FRANK LEE YOUTH CENTER** | **FLYC 06-** | |

| Date: | | Type of Incident: |
|---|---|---|

Narrative Summary (Continued) Page No.

On friday 16:07, we were told to go out side, the same complaining some one, made statement, look at Lt Hicks setting there with her coat on and sending us out in the cold. I went out and around side of B dorm, where the sun com hit you and the wind not so bad.

I sat down drinking coffee and smoking and four other guys who transferred here for work release who talking to each other about the cold and working different shifts and being put out in cold, one said he was going to get his Mom to call and complain to the warden.

Then I heard a bunch of noise on other side of A dorm and got up to see what was going on, a bunch of people were saying that they wanted to talk to the warden. Calvin was there saying I want to talk to the warden, I and some others went in the dining room area because some others were there. People were out side the door saying we want to see the Warden. Sgt Gray came in an told even one to settle down, that was no way to act to see the warden, she was going to call him. Lt Hicks came back told every one to go out side. The were about 20-25 people in the dining room (not yelling) when we went outside they were about 100-120 say they wanted to see warden, Calvin was saying he want to talk to the warden Sgt Avirah and officer Elise come around from kitchen area and Sgt Gray. She told everyone to quite down that they were not going to get any where talking and acting the way they were; Everybody started quiting down. She said the warden was on his way to talk to everyone. While people were waiting they were talking about all the things they needed to bring to the warden's attention. Calvin walked off to his self and I walked over and ask him what was wrong. He told me he was behind the kitchen and got soaking wet and Lt. Hicks told him to go out side and he told her he was soaking wet and it was cold. He said he wanted to talk to the warden. The count buzzer went off and Lt Hicks announce (Lock down) After they sent Calvin up front. Sgt Gray come to the shift office and was talking to people and I ask her to speak to the warden.

ADOC Form 302-B – June 1, 2005

She ask my name and said she would tell him. The warden come to the back and I ask him could I talk to him, he said he was in conference.   OVER →

Question's For The Disciplinary Hearing

1. I was not attempting or has ever attempted to incite a riot.

2. LT. Hick's don't I Colvin A. Lee, both had everytime something is wrong or I have a legitimate complaint. Sometimes

3. LT. Hick's have you had any problem's with Me Colvin A. Lee being Cooperative in the past 19 month's that I have been assigned at Frank Lee Work-Release. Never had a problem

4. LT. Hick's how would you describe my Conduct had this Accusation not been mentioned. Good

5. Lt. Hick's am I a threat to you or any other officer at Frank Lee Work-Release. Never had a problem never felt threatened.

Statement to LT. Hick's my opinion of you as a D.O.C. Official is that you are the best one at Frank Lee WorkRelease. I think highly of you. And nothing is going to change that. It troubles me, that you would bring these charges of this nature against me. Even though I have implicated you in a 1983 complaint. In all honesty the complaint wasn't filed to harm you. But done in hopes of getting higher Authorities. To issue Memo's and Regulation's. For you to have as a guide line, so that you won't have to make judgement calls on critical issue's pertaining to the inmates, here at Frank Lee. It's been an Honor working so closely with you, This is my life at risk here. My mother and father's life, my children and wife. All which is in your hand, I trust that you will do what is desired of God.

6. LT. Hick's this is all just a misunderstanding that in time will work itself out Trust me. I am not fighting you but only attempting to reason with you

Question for The Disciplinary Hearing

7. LT. Hick's Frank Lee Work-Release is operating as 3 different type Institution's isn't it. Work-Release, Honor-Camp, level of feeding and School. It's a level 1, 2 of during feeding never honor camp.

8. LT. Hick's there aren't any Rule's or Regulation's governing exactly what exact procedure's to take, Regarding certain situation's. Is this true And because of the different issue presented daily, It is extremely stressful at the D.O.C. side. Would you say that because of all the confusion and Chaos any incident out of character, Could be easily obliged out of proportion or needed to be determined as something that it's not. On this particular day, I pushed Intention & the shell ran from out & clean up.

9. LT. Hick's on November 16, wasn't you more disappointed with me, because of my Complaining. And wouldn't you say that maybe out of anger, rather than the Inciting a Riot charge. You leveled these charges against me. I was instructed to write you up for #53

10. Due Process Law's require That one accused has a constitutional right to face all his accuser's. On the Disciplinary Report LT. Hick's states that an Employee observed me inciting a Riot. Who is that Employee and I would like a sworn Affidavit of this statement to this Report. Also the same Sworn Affidavit of the names of the Inmate's mentioned on the Disciplinary Report. Irrelevent, we don't give names of informants.

11. I have two (2) witness on my behalf, that I would like the Hearing Board to hear, and consider their Statement as to what transpired November 16, 2007. (2) Corellan Cook W/175201, (3) Johnny Dobbins B/133551

12. LT. Hick's how many inmates did you hear or see shouting that they wanted to see the warden. None

13. Request to Amend to these Questions at a later time.

Certificate of Service

I do hereby Certify that a Copy of Question's and a Statement of Explanation was served on the Disciplinary Hearing Board to be Retained on Request This was done the _____ Day of 2007.

Respectfully Submitted,

Kilby Corr. Fac.
P. O. Box 150
MT. Meigs, AL 36057

Also the Accused Calvin McLee Request that the hearing be postponed until the Court Grant a Writ of Testificandum, for the 2 two witnesses to appear at the hearing.

The charge or violation of Rule 53 is without merit, because to incite a Riot. This has to occur.

incite : I have to Arouse to action, stir-up. To provoke or urge on
incite : To excite to anger. To stir up on purpose.

riot : mean a wild or turbulent disturbance, created by a large number of people.
(Law) A violent disturbance of the public peace, by three or more persons, assembled for a common purpose

Riot Act : is if 12 or more people unlawfully assemble and disturb the public peace. They must disperse upon proclamation or be guilty of felony - Read the Riot Act.

**STATE OF ALABAMA**

**DEPARTMENT OF CORRECTIONS**

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

**January 30, 2003**

**ADMINISTRATIVE REGULATION**
**NUMBER          403**

**OPR: INSTITUTIONS**

**DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS**

**I     GENERAL**

A.   This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.   A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.   Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.   When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II    DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III    PROCEDURE BEFORE HEARING

A.    Arrest or Charge of Inmate

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or

AR 403 January 30, 2003

making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.    Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.    Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.    Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.    Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.    Obtain Name of Witnesses Inmate wants at Hearing

AR 403 January 30, 2003

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.


## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then

AR 403 January 30, 2003

appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

D.     Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.     Swear the inmate and all witnesses under oath to testify truthfully.

F.     Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.     Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.     Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.     Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.     Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.     Call the inmate into the hearing room and inform him/her of the decisions reached.

L.     If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V     PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

A.    Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.    Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

C.    Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.    Complete, in the appropriate space, specifically the basis for the findings of fact.

E.    Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.    The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.    A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.    If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

1.    At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

a.    One copy to the Board of Pardons and Parole.

b.    One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

c.    Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

d.    One copy retained in the inmate's institutional file.

AR 403 January 30, 2003

2.    At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.    Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.    The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.    The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.    No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.    Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.    Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional

Page 7 of 23

AR 403 January 30, 2003

psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.    Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

    1.    There is no injury to staff during the incident or as a result of the violation.

    2.    No consequences arise which result in the loss or destruction of property and security of the institution.

    3.    There is no serious injury to inmates as a result of the violation or incident.

    4.    The violator is not likely to receive disciplinary segregation.

    5.    With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.    For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.    The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.    Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as

AR 403 January 30, 2003

having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

## VII  SANCTIONS

A.  Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.  Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.  Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

## VIII  STANDARD OPERATING PROCEDURES

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

## IX  APPEAL OF THE INMATE

The inmate may not appeal the final action by the Warden or his/her designee.

## X  REFERENCE

Administrative Regulation 414, "Behavior Citation Procedures for Informal Disciplinary Actions"

## XI  SUPERSESSION

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.


_____
Donal Campbell, Commissioner

**ANNEXES**
Annex A - Violations Table and Authorized Sanctions
Annex B - Definitions and Examples of Rule Violations
Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)
Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A

### VIOLATION AGAINST PERSONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSON(S) NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSONS |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

AR 403 January 30, 2003

## SECURITY VIOLATION

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 45 | ESCAPE BY FORCE |

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
## ANNEX A (Continued)

| | |
|---|---|
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |
| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |

| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
|---|---|
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS.

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

## MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

## WORK RELEASE AND SIR VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

## AUTHORIZED SANCTIONS

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28    HOMICIDE - The death of a human being caused by another person's actions.

29    ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30    ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC - See #29 above.

31    ASSAULT ON ANOTHER INMATE - See #28 or #29 above.

32    SEIZING OR HOLDING HOSTAGES IN ANY MANNER - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33    UNLAWFULLY DETAINING ANY PERSON - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34    FIGHTING WITH A WEAPON - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35    FIGHTING WITHOUT A WEAPON - Similar to #34 above except that a weapon or device used as a weapon are not present.

36    SEXUAL ASSAULT (FORCIBLE) - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37    SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38    INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39    EXTORTION OR BLACKMAIL - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40    ROBBERY - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41    MAKING FALSE STATEMENTS OR CHARGES –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42    GATHERING IN A THREATENING OR INTIMIDATING MANNER - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
### ANNEX B (Continued)

44    THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

## SECURITY VIOLATIONS

45    ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46    ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47    ESCAPE WITHOUT FORCE - See #45 above, except that there is no use of constraining power, compulsion, or force involved.

48    ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49    ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50    BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51    UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52    UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53    INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54    REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

56    FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    INSUBORDINATION - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

## ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B (Continued)

59    DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS
      DUTY - Self-explanatory.

60    BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant  anything  of  value
      with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61    DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscount of inmates within
      the institution.

62    INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating  a  situation
      which could cause serious impairment to the operation of        the institution, harm to individuals, or result
      in destruction of property.

63    DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal
      institutional/facility security or routine operation.

64    POSSESSION OF CONTRABAND - The possession of any item not issued to the  inmate  by  an  ALDOC
      employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S.   currency   in
      any amount, or items in excessive amounts.

65    POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR
      PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of
      drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an
      intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication
      unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the
      physician's authorization with medication at all times).

### PROPERTY VIOLATIONS

68    THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the
      property of another person without threat, force, or coercion, with the intent to permanently deprive the
      owner of the property.

69    DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE
      PROPERTY - Self-explanatory.

70    UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71    ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the
      inmate or another person.

72    FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to
      defraud or deceive.

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B (Continued)

73      COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

### POLICY VIOLATIONS

78      FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86      BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

### PERSONAL VIOLATIONS

90      CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

### MISCELLANEOUS VIOLATIONS

91      CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92      AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93      VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94      SOLICITING SEXUAL ACT - Self-explanatory.

PV      VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

### WORK RELEASE AND SIR VIOLATIONS

E8      VIOLATION OF SIR CONTRACT – Self-explanatory

E9      ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

ALDOC Form 225B

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1. Inmate: _____    Custody: _____    AIS _____

2. Facility: _____

3. The above inmate is being charged by _____ with a violation of Rule Number _____ specifically _____ from regulation #_____ which occurred on or about _____, 20 _____ at (time) _____(am/pm), Location: _____. A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: _____

   _____

   _____

   _____    _____
   Date                                Arresting Officer/Signature/Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _____ day of _____ 20 _____ , at (time)_____ (am/pm).

   _____    _____
   Serving Officer/Signature/Rank          Inmate's Signature/AIS Number

6. Witnesses desired? NO_____        YES_____
                      Inmate's Signature          Inmate's Signature

7. If yes, list _____

   _____

8. Hearing Date_____ Time _____ Place _____

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and attach.

10. A finding is made that inmate (is/is not) capable of representing him/herself.

    _____
    Signature/Hearing Officer

11. Plea: _____ Not Guilty _____ Guilty

12. The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

    _____
    Signature/Hearing Officer

Annex C to AR 403 (Page 1 of 5)

AR 403 January 30, 2003

13.    Arresting Officers testimony (at the hearing): _____

_____

_____

_____

14.    Inmate's Testimony: _____

_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony: _____

_____

_____

15.    The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

_____
Signature/Hearing Officer

16.    The following witnesses were not called - Reason not called

1. _____    _____

2. _____    _____

3. _____    _____

Annex C to AR 403 (Page 2 of 5)

AR 403 January 30, 2003

17.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

_____

18.   Basis for Findings of Fact: _____

_____

_____

_____

19.   Hearing Officer's Decision: _____ Guilty _____ Not Guilty

20.   Recommendation of Hearing Officer: _____

_____

_____


_____
Signature/Hearing Officer


_____
Type Name and Title

21.   Warden's Action – Date _____

       Approved _____

       Disapproved _____

       Other (Specify) _____

       _____

22.   Reason if more than 30 calendar days delay in action._____

       _____

23.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this _____ day of _____20___ , at time)_____(am/pm).

_____        _____
Signature/Serving Officer/Title                    Inmate's Signature/AIS Number

Annex C to AR 403 (Page 3 of 5)
AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DISCIPLINARY REPORT (OPTIONAL)**

Inmate Name/AIS Number _____    Incident Report No. _____

Facility _____

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING OFFICER
(QBHO) TO ARRESTING OFFICER: _____

_____

_____

_____

_____

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO) TO
INMATE: _____

_____

_____

_____

_____

CONTINUED WITNESS TESTIMONY (QBHO): _____

_____

_____

_____

_____

CONTINUED FINDINGS OF FACT: _____

_____

_____

_____

_____

AR 403 January 30, 2003

CONTINUED BASIS FOR FINDINGS OF FACT: _____

_____

_____

_____

_____

CONTINUED HEARING OFFICER'S RECOMMENDATIONS: _____

_____

_____

_____

_____

OTHER: _____

_____

_____

_____

_____

AR 403 January 30, 2003

ALDOC Form 225D

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name _____ AIS # _____

Violation(s) _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

---

## ALABAMA DEPARTMENT OF CORRECTIONS
## NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING

Inmate's Name _____ AIS # _____

Violation (s) _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

Annex D to AR 403

Page 23 of 23

AR 403 January 30, 2003



## Spears, Donald

**From:** Sutherland, Diane
**Sent:** Tuesday, April 18, 2000 12:02 PM
**To:** Spears, Donald; Chastain, Deborah
**Subject:** FW: Response to the e-mail on deletion of disciplinaries

-----Original Message-----
**From:** Teague, Betty
**Sent:** Tuesday, April 18, 2000 11:58 AM
**To:** DOC -- >Classification; DOC -- >Wardens; DOC -- >Directors
**Cc:** Holt, Kathy; Lovelace, Greg; Barker, Renee
**Subject:** FW: Response to the e-mail on deletion of disciplinaries

The institutions are now authorized to correct their own data entry errors regarding the entry of disciplinaries. The instructions of how to do this are listed below. Also, if the Warden wants a disciplinary to be expunged, this should now be accomplished at the institutional level with his written approval. You must send a written copy of this expungement directive to Central Records in order that the original copy of the disciplinary can also expunged from the Central record file. Thank you for your prompt attention to this matter. If your data entry operators need assistance, during this transition, contact Renee Barker at Central Records. Thanks.

-----Original Message-----
**From:** Barker, Renee
**Sent:** Tuesday, April 18, 2000 11:44 AM
**To:** Teague, Betty
**Subject:** FW: Response to the e-mail on deletion of disciplinaries

-----Original Message-----
**From:** Barker, Renee
**Sent:** Tuesday, March 21, 2000 9:06 AM
**To:** Teague, Betty
**Cc:** Holt, Kathy
**Subject:** Response to the e-mail on deletion of disciplinaries

The following instructions are provided for deleting a disciplinary that has been entered in error:

1. Ensure that you have the correct inmate name and AIS# before deleting.
2. Ensure that you have the correct sequence number to be deleted by pulling up the CDDIS screen.
3. Using the CXDIS screen enter as follows to delete a disciplinary:
CXDIS space 00AISand suffix space (/) slash and sequence number. If there is no suffix space after the AIS#. A delete screen will come up and if you wish to delete enter a "Y" for yes or if you have pulled up the wrong sequence you can enter "N" for no and it will not be deleted.
4. To correct a data entry error without deleting the disciplinary you would simply use the CDRVK screen the AIS# space and then the correct sequence number that you wish to correct. This will not work on citations you must delete them and re-enter.

The following instruction are submitted for your approval.

Thank you.

1

# ALABAMA DEPARTMENT OF CORRECTIONS
## MAJOR INSTITUTIONS - BEHAVIOR CITATION  FLYC 07- 3698

INMATE: Brandon Williams _____ AIS : B/234998 _____ DORM/BED #: D22B

FACILITY: Frank Lee Youth Center _____ Job Asgmt: Bath 1st _____ Custody: Min.

The above named inmate is cited by ____ CO Jerome Osborne _____ for the following

Rule # 85 ____ Violation(s) of Institutional / departmental rule(s) as described: ____ On 7-26-07 __
at approximately 6:50am during morning inspection You, inmate Brandon Willliams B/234998 was
not properly shaved.

Date of Infraction: 7-26-07 _____ Time of Infraction: 6:50am

Location of Infraction: D-Dorm _____

Jerome Osborne, CO _____ *Jerome Osborne 7-27-07*
Citing Employee / typed name / rank    Citing Employee's Signature / Date
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I have investigated the circumstances surrounding this citation and recommend that the following
sanction(s) be taken against this inmate:                                *Warning*

( __X__ ) Counseling/Warning    ( _____ ) Loss of Telephone privileges for _____ days

( _____ ) Loss of Canteen Privileges for _____days    ( _____ ) Removal from Incentive Program

( _____ ) Loss of Visiting Privileges for _____ days    ( _____ )Removal from Hobby Crafts Program

( x ) Extra duty for 21 days at 1 hours per day under supervision of 1 shift.
*B/ .... 234998, 7-27-07*    *Harold Chils LT 7/27/07*
Inmates Signature / AIS / Date    Shift Supervisor Signature / Date
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

After having reviewed this citation and the recommendation sanction(s) presented, the following
action is approved:

( _____ ) Citation and sanctions are approved.

( __X__ ) Citation and sanctions are approved as modified:    *Warning with Extra Duty*

( _____ ) Citation and sanctions are disapproved and formal disciplinary action is to be
immediately initiated    under the provisions of ADOC AR 403.

( _____ ) Citation and sanctions are disapproved. Expunge action from inmate's file.

_____    *Burt Jr. 7-27-07*
Effective Date of Sanctions    Warden / Designee's Signature / Date
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Inmate receipt of completed action:    *234998 7/30/07*
                                   Inmate's Signature / AIS / Date

Serving Officer's Initials: _____
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Distribution: ( ) Captain    ( )Shift Commander _____ shift    ( ) Business Office
( )ICS (as required)    ( )Psychologist    ( )Classification    ( )Central Records    ( )File

Alabama Department of Correction
Major Institutions – Behavior Citation

| INMATE: Brandon Williams | AIS: B/234998 | CELL/DORM/BED # : C28B |
|---|---|---|

FACILITY: **FRANK LEE YOUTH CENTER**

| The above named inmate is cited by: Lt. Kenneth Lacey |
|---|
| For the following violation(s) of institutional /departmental rule(s) as described: |
| #50 Being in an Unauthorized Area - On 8/14/07 Lt. Kenneth Lacey observed inmate |
| Brandon Williams B/234998 in B dorm tv area.  Inmate Williams  is assigned to C dorm |
| and did not have permission to be in B dorm. |
| |

| Date of Infraction: 8/14/07 | Time of Infraction: 10:30pm |
|---|---|

_Citing Employee's Signature/Date_

I have investigated the circumstances surrounding this citation and recommend that the following sanction(s) be taken against this inmate.

☐ Counseling/Warning  ☑ Loss of Telephone privileges 21 days.
☑ Loss of Canteen privileges for 21 days. ☐ Removal from incentive program.
☑ Loss of Visiting privileges for 21 days. ☐ Removal from Hobby Crafts.
☑ Extra duty for 21 days at 1 hours per day under supervision of 3/6 shift.
☐ Wear pink clothing for _____ days (Indecent Exposure/Exhibitionism)**

234998
_Inmate's Signature/AIS/Date_                    _Shift Supervisor's Signature/Title/Date_

**Wearing of Pink Clothing must be approved by the Warden

After having reviewed this citation and the recommended sanction(s) presented, the following action is approved.

☑ Citation and sanctions are approved.
☐ Citation and sanctions are approved as modified below:

_____

☐ Citation and sanctions are disapproved and formal disciplinary action is to be immediately initiated under the provisions of ADOC AR 403.
☐ Citation and sanctions are disapproved. Expunge action from inmate's file.

10-15-07 THRU 11-5-07                              10-15-07
_Effective Date of Sanctions_                      _Warden/Designee's Signature/Date_

Inmate's receipt of completed action: 234998 10/29/07
_Inmate's Signature/AIS/Date_
Serving Officer's Initials: CB

Distribution: ☐ Captain  ☐ Shift Commander _____ shift.  ☐ Business Office
             ☐ Psychologist  ☐ Classification     ☐ Central Records

ENTERED
11-5-07

Annex A to AR 414





**STATE OF ALABAMA**

## DEPARTMENT OF CORRECTIONS

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

FOB JAMES, JR.
GOVERNOR

JOE S. HOPPER
COMMISSIONER

October 3, 1996

ADMINISTRATIVE REGULATION
NUMBER          414

OPR:   INSTITUTIONS

### BEHAVIOR CITATION PROCEDURES
### FOR INFORMAL DISCIPLINARY ACTIONS

I.   **GENERAL**

A.   This regulation establishes policies/procedures governing the conduct and disposition of Informal Disciplinary Actions for inmates in the custody/control of Alabama Department of Corrections. The Wardens, their designee(s) and other Department of Corrections (DOC) employees whose duties involve the citing or processing of informal disciplinary actions are responsible for following the provisions of this regulation. In all procedures requiring action by the Warden, he/she may act through his/her designee.

*Chg #2*
*7-25-03*

B.   A Supervisor will investigate and make recommendations of sanctions to the Warden or his/her designee for Behavior Citations initiated by DOC employees or ~~their Medical~~ Contracted employees.

C.   Sanctions may include, but are not limited to:   loss of any or all privileges (visitation, canteen, telephone, pass, incentive or hobby craft program, etc.), being placed on extra duty, change in job assignment, removal from good time earning status, and referral to Classification for custody review~~, and assignment to institutional chain gang for up to fifteen (15) days.~~

D.   Any major or minor violation of a certain nature may be adjudicated via a behavioral citation if said violation meets criteria established in AR 403.

E.  After the Warden/designee has completed his action, the inmate will be served a completed copy informing him/her of the approved sanctions and the effective date. Inmate will be required to sign for his/her copy or the serving employee will write "Refused to Sign" and give the inmate a copy.

F.  Distribution will be made to those offices affected by the sanctions (Business Office, etc.) and to Classification for data entry and to facility and Central Records for filing.

IV.  **APPEAL BY THE INMATE**

The inmate may not appeal the final action by the Warden or his/her designee.

V.  **REFERENCE**

Administrative Regulation 403, "Disciplinary Hearing Procedures for Major Rule Violations"

VI.  **SUPERSESSION**

This regulation supersedes Administrative Regulation 414, dated November 7, 1995.

_Joe S. Hopper_

Joe S. Hopper, Commissioner

**ANNEXES**

Annex A    Behavior Citation (Major Institutions)
Annex B    Behavior Citation (Work Releases)
Annex C    Violation Table and Punishments
Annex D    Definitions and Examples of Rule Violations

**SUMMARY OF CHANGES**

Modifies procedures and Annexes A, C and D.

## VIOLATION AND TABLE PUNISHMENT

| MINOR RULES VIOLATIONS | VIOLATIONS TYPES |
|---|---|
| | **Violation Against Persons** |
| 43 | Harassment |
| **55, 58, 63 and 65** | **Security Violations** |
| 55 | Unsatisfactory work |
| 58 | Lying or giving false information or testimony to an employee |
| 63 | Disorderly conduct |
| 65 | Failure to report |
| **74 thru 77** **79 thru 85** **87 and 89** | **Policy and Procedure Violations** |
| 74 | Gambling |
| 75 | Violation of institutional mail rules |
| 76 | Corresponding with another inmate without permission |
| 77 | Violation of visiting privileges |
| 79 | Unauthorized operation of a vehicle |
| 80 | Unauthorized use of institutional resources |
| 81 | Feigning illness |
| 82 | Marrying without permission |
| 83 | Charging or accepting any compensation for legal assistance |
| 84 | Unauthorized use of telephone |
| 85 | Violation of institutional rules and regulations |
| 87 | Malingering |

Annex C to AR 414 (Page 1 of 2)

# DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS

### 43 - Violation Against Persons

43   HARASSMENT - To badger, bait, torment, or hound; also to intimidate another by unlawful coercion or duress.

### 55, 58, 63 and 65 - Security Violations

55   UNSATISFACTORY WORK - Assigned work not performed in a satisfactory manner due to carelessness, inattention to detail, or indifference.

58   LYING OR GIVING FALSE INFORMATION OR TESTIMONY TO AN EMPLOYEE - Making statements which are known to be untrue, especially to deceive an employee of the DOC, such as lying to a Hearing Officer.

63   DISORDERLY CONDUCT - Any behavior that is contrary to institutional policy or regulation, and may tend to disturb the security of the institution.

 65   ~~FAILURE TO REPORT - Not reporting for appointments or~~ being at a ~~designated place as ordered by any DOC employee.~~

### 74 thru 77, 79 thru 85, 87, 89 and 90 - Policy and Procedure Violations

74   GAMBLING - Conduct in which a person stakes or risks something of value based upon the outcome of a contest of chance, or the possession of equipment or paraphernalia used in said contest, or the operation of such a contest.

75   VIOLATION OF INSTITUTIONAL MAIL RULES - The specific definition of the charge depends upon the mail rules.

76   CORRESPONDING WITH ANOTHER INMATE WITHOUT PERMISSION - Self explanatory

77   VIOLATION OF VISITING PROCEDURES - The specific charge depends upon the visiting procedures at the particular institution at which the violation occurs.

79   UNAUTHORIZED OPERATION OF A VEHICLE - To include the operation of a state vehicle in an unauthorized area.

80   UNAUTHORIZED USE OF INSTITUTIONAL RESOURCES - The use of institutional or departmental supplies, tools, equipment or machinery without permission.

81   FEIGNING ILLNESS - Self explanatory

82   MARRYING WITHOUT PERMISSION - Self explanatory

**ALABAMA DEPARTMENT OF CORRECTIONS**
**MAJOR INSTITUTIONS – BEHAVIOR CITATION**

INMATE: _____  AIS: _____  CELL/DORM/BED #:_____

FACILITY: _____  JOB ASGMT: _____  CUSTODY: _____
The above named inmate is cited by _____ for the following
violation(s) of institutional/departmental rule(s) as described:
_____
_____

Date of Infraction: _____  Time of Infraction: _____ (am or pm)
Location of Infraction: _____

_____
Citing Employee's Signature/Date
*****************************************************************************
I have investigated the circumstances surrounding this citation and recommend that
the following sanction(s) be taken against this inmate:

( ) Counseling/Warning  ( ) Loss of Telephone Privileges for _____ days
( ) Loss of Canteen Privileges for _____ days  ( ) Removal from Incentive Program
( ) Loss of Visiting Privileges for _____ days  ( ) Removal from Hobby Crafts Prg.
( ) Extra Duty for _____ days at ____ hours per day under supervision of ____ Shift
( ) Removal from good time earning status
( ) Referral to Classification for custody review
( ) Assignment to institutional chain gang for up to fifteen (15) days

_____  _____
Inmate's Signature/AIS/Date          Shift Supervisor's Signature/Title/Date

*****************************************************************************
After having reviewed this citation and the recommended sanction(s) presented, the
following action is approved:

( ) Citation and sanctions are approved
( ) Citation and sanctions are approved as modified below:

_____
_____

( ) Citation and sanctions are disapproved and formal disciplinary action is to be
    immediately initiated under the provisions of ADOC AR 403.
( ) Citation and sanctions are disapproved. Expunge action from inmate's file.

_____  _____
Effective Date of Sanctions          Warden/Designee's Signature/Date
*****************************************************************************

Inmates receipt of completed action:  _____
                                      Inmate's Signature/AIS/Date
Serving Officer's Initials: _____
*****************************************************************************
Distribution:  ( ) Captain ( ) Shift Cmdr ____ Shift ( ) Business Office ( ) ICS
(As Required)  ( ) Psychologist ( ) Classification ( ) Central Records ( ) File

                                              Annex A to AR 414

From:S-SANDRA          Date:96/10/08          Time:11:22          Page:  1

        To:041WARDN      Subject:EMERGENCY CHANGES - AR 403 & 414

    Copies:041WARDN

======From:S-SANDRA===96/10/08===10:44===SANDRA BUTLER          240-9582==========
CTOBER 8, 1996

O:      WARDENS/DIRECTORS

ROM:    THOMAS A. GILKESON
        DIRECTOR OF RME

HE FOLLOWING EMERGENCY CHANGES SHOULD BE ANNOTATED TO ADMINISTRATIVE REGULA-
IONS 403 AND 414:

DMINISTRATIVE REGULATION 403:

ECTION VI/D4 - PAGE 8      CHANGE COMMA AFTER WORD "SEGREGATION" TO A PERIOD (.)
                           AND DELETE REMAINDER OF SENTENCE.

DMINISTRATIVE REGULATION 414:

ECTION I/C - PAGE 1        AFTER THE WORD "STATUS" ADD "AND", AND DELETE REMAIN-
INE 4                      DER OF SENTENCE AFTER THE WORD "REVIEW" ON LINE FIVE.

NNEX A TO AR 414           IN THE SECTION STATING "SANCTION(S) THAT MAY BE TAKEN
                           AGAINST THE INMATE" DELETE "() ASSIGNMENT TO INSTITU-
                           TIONAL CHAIN GANG FOR UP TO FIFTEEN [15] DAYS"

HIS CHANGE IS REQUIRED DO TO INCONSISTENCIES BETWEEN ADMINISTRATIVE REGULA-
IONS 403 AND 414.

ILE A COPY OF THIS CHANGE BEHIND EACH REGULATION UNTIL A HARD COPY OF CHANGES
RE RECEIVED.

AG/SJB
======From:S-SANDRA===96/10/08===11:22===SANDRA BUTLER          240-9582==========



### STATE OF ALABAMA

### DEPARTMENT OF CORRECTIONS

Research, Monitoring, & Evaluation
Post Office Box 301501
Montgomery, Alabama 36130-1501

FOB JAMES, JR.
GOVERNOR

JOE S. HOPPER
COMMISSIONER

TO:  WARDENS
     HEADS OF STAFF AGENCIES
     DIVISION HEADS

CHANGE #1
ADMINISTRATIVE REGULATION #414
December 17, 1996

BEHAVIOR CITATION PROCEDURES
FOR INFORMAL DISCIPLINARY ACTIONS

1.  Purpose/explanation of changes:  To identify and reflect major Rule #65 (a contraband violation) as minor Rule #96 (a miscellaneous violation).  It also incorporates a previous emergency change.

2.  Changes to be made:

| Reference | Action Required |
|---|---|
| Section I/C - Page 1, Line 4 | After the word "status" add "and", and delete remainder of sentence after the word "review" on line five. |
| Annex A | In the section stating "sanction(s) that may be taken against the inmate" delete "( ) assignment to institutional chain gang for up to fifteen [15] days". |
| Annex C (Page 1) | Delete" "Rule #65" |
| Annex C (Page 2) Miscellaneous | Add: Rule #96 - Failure to Report |
| Annex D (Page 1) | Delete: "Rule #65" |

**STATE OF ALABAMA**

## DEPARTMENT OF CORRECTIONS

Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

July 25, 2003

TO:   WARDENS                                                         CHANGE #2
      HEADS OF STAFF AGENCIES               ADMINISTRATIVE REGULATION 414
      DIVISION HEADS
      ADMINISTRATIVE REGULATION MONITORS

### BEHAVIOR CITATION PROCEDURES FOR INFORMAL DISCIPLINARY ACTIONS

PURPOSE:   To include contract security employees who will be serving in the same capacities as ALDOC employees.

CHANGES TO BE MADE:

| Reference | Action Required |
|---|---|
| Section IB | Change paragraph to read: "A Supervisor will investigate and make recommendations of sanctions to the Warden or his/her designee for Behavior Citations initiated by ALDOC employees or contracted employees." |

File this numbered change at the back of the regulation after annotating both the index and the regulation to indicate the required changes have been completed.   Advise all personnel in your organization of the change to this regulation.

_____
Donal Campbell, Commissioner

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Calvin Alphonse Lee, #152056              )
                                          )
        PLAINTIFF,                        )
                                          )    CIVIL ACTION NO. 2:08-CV-18-WKW
Levan Thomas, et al.,                     )
                                          )
        DEFENDANTS.                       )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared Janet Hicks, who being known by me and first duly sworn, deposes and says under oath as follows:

My name is Janet Hicks and I am presently employed as a Correctional Lieutenant with the Department of Corrections, at Frank Lee Work Release Center, Deatsville, Alabama. I am over twenty-one (21) years of age. By my signature below, I certify that the statements therein are true to the best of my knowledge.

In his complaint, inmate Calvin Lee, BM/152056, alleges that his rights were violated when two other inmates were allowed to go unpunished after the inmates, inmate Rico Gibson, BM/243851, and inmate Brandon Williams, BM/234998, received disciplinaries. Inmate Lee claims that these two inmates were issued disciplinaries and yet, they were not prosecuted. Inmate Lee further alleges that he received a disciplinary for violation of Rule #53, Inciting to Riot, by methods of conspiring and scheming; thus violating his (inmate Lee's) Constitutional Rights. These allegations are false.



I know nothing about the other two inmates named in this suit. I was not the Arresting Officer when neither inmate was written up, nor do I have any knowledge of the two receiving disciplinaries that were not prosecuted.

After learning that inmate Lee was on the Exercise Yard, chanting and encouraging other inmates to demand to see the Warden in reference to me, he was summoned to the Warden's Office and questioned. At the time, I knew nothing of the incident. The Warden, Warden Levan Thomas, questioned me the morning of November 16, 2007, after he arrived to work and was informed by an inmate he (Warden Thomas) considered to be a confidential informant, that inmate Lee had "cussed" me out. I informed Warden Thomas that inmate Lee did not "cuss" me out. Warden Thomas instructed me to send inmate Lee to his office. Inmate Lee was summoned to the Shift Office and then sent to Warden Thomas' Office. Warden Thomas telephoned me again, while inmate Lee was in his office, and asked me if we (inmate Lee and myself) had had a misunderstanding when he was ordered to report to the yard and he was wet from washing trashcans. I informed Warden Thomas that I had no knowledge of his complaint of being wet and being sent to the yard. Inmate Lee was asked by Warden Thomas if he had informed me he was wet, to which he stated to Warden Thomas that he did not.

I still knew nothing of the alleged incident. It wasn't until an officer assigned to my shift told me of the incident and also told me that another supervisor, Sgt. Ruby Grays, the Admin Sergeant, ran out on the yard, after hearing the Tower Officer call to any available unit that something was going on behind the Kitchen. Sgt. Grays did run pass me, I didn't have a radio at the time, and stated, "Lieutenant, something is going on behind the Kitchen." Nothing was going on behind the Kitchen and I went back to the

dorms, clearing the dorms for cleaning. (The incident with inmate Lee occurred on the side of the Kitchen.) I was later told when the incident occurred she, Sgt. Grays, had quelled the inmates by telling them that she would tell the Warden when he arrived to work that the inmates wanted to see him. I also learned that she went and telephoned the Captain of Security, who telephoned me and instructed me to close the Exercise Yard, with no explanation of what was going on, only that it was cold outside. The same inmate who told Warden Thomas that inmate Lee "cussed me out" came to the office and stated, "Lt. Hicks I told the Warden about Calvin Lee." I asked the inmate what happened. He told me that he thought I heard inmate Lee cussing me as he exited the center to the yard. I thanked the inmate and went on with my duties. Later that day, near the end of the shift, a couple of the officers assigned to my shift asked me if inmate Lee was transferred due to his actions. They began to tell me what inmate Lee had done out on the yard earlier that morning and that Sgt. Grays had quelled the situation.

The next day, my "runner" told me that inmate Lee was going around that night, obtaining signatures from other inmates in hopes of his petition causing me to lose my job. I telephoned Warden Thomas, at home, and reported the allegations to him. Not only did Warden Thomas instruct me to initiate disciplinary action against inmate Lee, I too, wanted him written up due to his negative behavior. I asked Warden Thomas if inmate Lee would be transferred. I was informed that he would have the Classification Supervisor, arrange for a transfer the following Monday. I reported to work the following Monday, my off day, and initiated disciplinary action against inmate Lee.

It should be known, that inmate Lee worked for me on the weekends. When he reported to work the following day, Saturday, November 17, 2008, I fired him. I did not

want him working for me after his display of negative behavior. I also feared for my safety because several inmates came to the office that day (Saturday) and informed me that they were out at work, but they too had heard about the way inmate Lee acted and how he had stated that he was "going to get my job."

I did charge inmate Lee accordingly. I was not forced to charge him, nor did I conspire or scheme with anyone in regards to inmate Lee. Once I learned of the situation on the yard, from the Warden, other employees and my "runner," who I consider to be a confidential informant, I initiated disciplinary action against inmate Lee. Attached is a copy of the incident report (#FLWRC07-548) in which inmate Lee was charged. Also attached is a copy of the disciplinary, Sgt. Nathan Parrish chaired, in which inmate Lee was found guilty of Inciting to Riot.

At no time did I violate inmate Lee's Constitutional Rights. My actions were within the course and scope of my duties, as a Correctional Lieutenant at Frank Lee Work Release Center. This statement is true and correct.

Janet Hicks, Correctional Lieutenant

Frank Lee Work Release Center

STATE OF ALABAMA)
ELMORE COUNTY     )

Sworn to and subscribed before me and given under my hand and official seal this the
31st_ day of January, 2008.

_____
Notary Public

_____
7-25-2011
My Commission Expires

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1.Institution:<br>**Frank Lee Work Release Center** | **2. Date:**<br>11/16/07 | 3. Time:<br>8:30 a.m. | 4. Incident Number:<br>FLWRC 07-548 | Class Code:<br>C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred:<br>FLWRC - Shift Office | | 6. Type of Incident: #63, Inciting to Riot<br> | | |
| 7. Time Incident Reported:<br>6:30 a.m.(11/17/07) | | 8. Who Received Report:<br>Warden Levan Thomas | | |

| 9. Victims: | Name | | AIS | |
|---|---|---|---|---|
| a. | N/A | No. | | |
| b. | | No. | | |
| c. | | No. | | |

| 10. Suspects: Name | AIS | 11. Witnesses: Name | AIS |
|---|---|---|---|
| a Calvin Lee | No. B/152056 | a N/A | No. |
| b | No. | b | No. |
| c | No. | c | No. |
| d | No. | d | No. |
| e | No. | e | No. |
| | | f | No. |
| | | g | No. |

PHYSICAL EVIDENCE:
12. Type of Evidence
   N/A

13. Description of Evidence:
   N/A

14. Chain of Evidence:
a   N/A
b
c
d
e

15. Narrative Summary:
  On November 16, 2007, Lt. Janet Hicks was the on duty Shift Commander at Frank Lee Work Release Center. Lt. Hicks had instructed the officers assigned to the First Shift to direct the inmates to the Exercise Yard for the cleaning of the center. The officers did as instructed. Several inmates assigned to Dorm A complained that they did not have to go outside if they were assigned to Work Release. Lt. Hicks explained to most of the inmates that if they did not have a job, they had to report outside, they could not sleep in; per Warden Thomas. The inmates went outside as instructed. After instructing the inmates to report to the yard, Lt. Hicks received a telephone call from Captain Horace Burton, who instructed Lt. Hicks to bring the inmates back inside. Lt. Hicks followed the order given. The inmates returned inside. At approximately 8:30 a.m., Warden Levan Thomas telephoned Lt. Hicks in the Shift Office and questioned her about inmate Calvin Lee, BM/152056. InmateLee had been summoned to the Warden's Office for questioning. Lt. Hicks had no knowledge about the claims inmate Lee was making in reference to him being wet and ran out of the dorm earlier that

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **Frank Lee Work Release Center** | **FLWRC 07-** 548 | C |

| Date: | Type of Incident: |
|---|---|
| 11/16/07 | Inciting to Riot |

Narrative Summary (Continued) Page No. 2

morning. Lt. Hicks informed Warden Thomas that inmate Lee had been seated at the table in the back of Dorm A, reading the newspaper when Lt. Hicks had ordered him to the yard. Inmate Lee did not state that he was wet. Lt. Hicks explained to Warden Thomas that if inmate Lee had of informed Lt. Hicks that he was wet, Lt. Hicks would have directed him to the shower, given him a change of dry clothes and then directed him to the yard. Inmate Lee had been seated at the table in the back of the dorm, reading. The day before that, Lt. Hicks had run him out of the Kitchen during Yard Call, reading the newspaper. Lt. Hicks further explained to Warden Thomas that inmate Lee worked for her and she had never had a problem with him, that he was a good worker. Warden Thomas and Lt. Hicks ended their conversation.

A short time later, one of the Stewards assigned to the Kitchen entered the office and asked Lt. Hicks if she was writing inmate Lee a disciplinary. Lt. Hicks asked her why and she stated that inmate Lee had been trying to get the inmates assigned to FLWRC to refuse to go to the yard, that he had called Lt. Hicks all kinds of names and that he had been shouting out on the yard that all the inmates needed to see the Warden when he got in, that Lt. Hicks could not ship all of the inmates if they refused to go outside. Lt. Hicks informed the Steward that if she heard inmate Lee making these statements she could write him up. She stated that inmate Lee was one of the best workers she had. Lt. Hicks ended the conversation. An inmate, who Lt. Hicks considered to be a confidential informant, entered the office and stated that he wanted to give Lt. Hicks a "heads up," that inmate Lee was out on the yard trying to get the inmates to complain about her to Warden Thomas.

On Saturday, November 17, 2007, Lt. Hicks reported to work and several inmates informed Lt. Hicks that inmate Lee had been going from dorm to dorm, trying to get the inmates to sign a petition against Lt. Hicks. Lt. Hicks telephoned Warden Thomas and reported the incident to him. Warden Thomas instructed Lt. Hicks to inititate disciplinary action against inmate Lee for violation of Rule #53, Inciting to Riot, and that inmate Lee would be transferred. Lt. Hicks reported to work on Monday, November 19, 2007, to complete the paperwork. No further action taken at this time. Inmate Lee remains at FLWRC, pending transfer and disciplinary action.

Lt. Janet Hicks
_____
Lieutenant Janet Hicks