IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CALVIN ALPHONSE LEE,  #152056,    )
    )
       Plaintiff,    )
    )
    v.    )    CIVIL ACTION NO. 2:08-CV-18-WKW
    )    [WO]
    )
LEVAN THOMAS, et al.,    )
    )
       Defendants.    )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Calvin Alphonse Lee ["Lee"], a former state inmate, on January 8, 2008.[1]  In the complaint, as amended, Lee alleges the correctional defendants imposed a false disciplinary against him for inciting to riot in violation of his due process and equal protection rights.  Lee further complains the medical care providers for the Alabama Department of Corrections denied him adequate treatment for his knees since October of 2007.  *Plaintiff's Complaint - Court Doc. No. 1* at 7.  He alleges the medical defendants "are in violation of the plaintiff['s] Equal Protection rights and Eight[h] Amendment rights" and "believe[s] [their actions are] in retaliation for filing a previous 1983 complaint against the previous heath care provider, Prison Health Services."  *Id.*  Lee names Levan Thomas, a warden at Frank

---

[1]Although Lee filed this complaint during his incarceration in state prison system, the record in this case establishes that Lee was released from the custody of the Alabama Department of Corrections on January 24, 2008.

Lee Work Release Center, Janet Hicks and Nathan Parrish, correctional officers at the aforementioned correctional facility, Prison Health Services ["PHS"], the health care provider for the state prison system until October 31, 2007, and Correctional Medical Services, Inc. ["CMS"], the current medical care provider, as defendants in this cause of action. Lee seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights. *Id.* at 4.

The defendants filed answers, special reports and supporting evidentiary materials addressing Lee's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *Order of September 3, 2008 - Court Doc. No. 46*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and Lee's response in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a ) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Lee is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts,

a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Lee fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims Lee lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419,

7

1429 (11ᵗʰ Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11ᵗʰ Cir. 1994). Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11ᵗʰ Cir. 1989).

### B. Disciplinary Claims Against the Correctional Defendants

1. Allegation of Fabricated Disciplinary Charge. Lee asserts the disciplinary charge lodged against him by defendant Hicks for his violation of Rule #53 resulted from a false accusation. The correctional defendants maintain the disciplinary at issue occurred solely due to Lee's violation of institutional rules governing inmate behavior. *Correctional Defendants' Exhibit 1-C to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Janet Hicks) - Court Doc. No. 44-3* at 2-4 and *(Incident Report FLWBC 07-548) - Court Doc. No. 44-3* at 6-7. It is therefore clear that the defendants do not admit that the information contained in the disciplinary report is either fabricated or false.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11ᵗʰ Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution. The appellate court carefully distinguished its holding from its prior decision in *Slocum v. Georgia State Bd. of Pardons*

*and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in
> *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied
> parole, made the conclusory allegation that the Board must
> have relied upon erroneous information because otherwise the
> Board would surely have granted him parole.  *Slocum*, 678
> F.2d at 941. The plaintiff then sought to assert a due process
> right to examine his prison file for the alleged errors.  Unlike
> the instant case, in *Slocum* the state did not admit that it had
> relied upon false information in denying parole nor did the
> plaintiff present any evidence that his prison file even
> contained any false information. We held in *Slocum* that
> prisoners do not state a due process claim by merely asserting
> that erroneous information may have been used during their
> parole consideration.  *Id.* at 942. We also determined that
> prisoners do not have a due process right to examine their
> prison files as part of a general fishing expedition in search of
> false information that could possibly exist in their files.  *Id.* In
> the case at bar, we are confronted with prison authorities who
> admit that information contained in Monroe's files is false and
> that they relied upon such information, at least in part, to deny
> Monroe parole and to classify him as a sex offender. As we
> stated, the parole statute does not authorize state officials to
> rely on knowingly false information in their determinations.
> *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.

Slocum* controls the disposition of the instant case.  The correctional defendants

assert the information on which they relied in the disciplinary process is correct and an

accurate representation of the plaintiff's disruptive conduct.  Moreover, there is no

evidence before the court that the defendants relied on information they knew to be false

during any stage of the disciplinary process.  Specifically, there is no admission by any of

the defendants that the information utilized in levying the disciplinary against Lee is false,

incorrect or erroneous. The record in this case therefore establishes that the defendants did not rely on ***admittedly*** false information. In light of the foregoing, the plaintiff is entitled to no relief as a matter of law and summary judgment is due to be granted in favor of the defendants on his false disciplinary claim.

2. <u>Conspiracy</u>. Lee alleges the disciplinary action taken against him resulted from a conspiracy among the correctional defendants. "Conspiring to violate another person's constitutional rights violates section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate

the existence of a conspiracy.  *Harvey*, 949 F.2d at 1133.

The correctional defendants deny they conspired to violate Lee's constitutional rights and, instead, argue they acted appropriately at all stages of the disciplinary proceedings.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Lee's suppositious theory that the defendants engaged in conspiratorial acts against him.  Specifically, Lee has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy."  *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Lee's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy among the correctional defendants.  *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557.  Consequently, Lee has failed to produce any evidence of a conspiracy and summary judgment is due to be granted in favor of the defendants on this claim.  *Bailey*, 956 F.2d at 1122.

3.  <u>Denial of Equal Protection</u>.  Lee alleges the correctional defendants acted in violation of his right to equal protection in initiating and prosecuting the inciting to riot disciplinary charge against him while "allowing ... inmates [Rico Gibson and Brandon Williams] to go unpunished" for their alleged violations of other institutional rules. *Plaintiff's Complaint - Court Doc. No. 1* at 2.[3]

---

[3]The undisputed documents before the court establish that Lee is an African-American as are inmates Gibson and Williams.

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).  Since this case is before the court on a properly supported motion for

summary judgment from the defendants, Lee bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Id*. at 249.

The correctional defendants adamantly deny they undertook any action in Lee's disciplinary proceedings based on a constitutionally impermissible reason. *Correctional Defendants' Exhibit 1-A to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Nathan Parrish) - Court Doc. No. 44-1* at 1-3; *Correctional Defendants' Exhibit 1-C to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Janet Hicks) - Court Doc. No. 44-3* at 2-4. The defendants further maintain that the disciplinary action against Lee occurred solely due to their determination that Lee's behavior constituted a major disciplinary infraction. *Id*. Moreover, the defendants assert that disciplinary action was, in fact, initiated against inmate Gibson for his possession of a cell phone, but such action was *nol prossed* because the hearing officer assigned Gibson's disciplinary did not conduct the disciplinary hearing in accordance with applicable

13

administrative rules.  The defendants likewise maintain that inmate Williams did receive behavior citations for minor disciplinary infractions due to violations of institutional rules regarding Williams' failure to properly shave and his presence in an unauthorized area.

Initially, the evidence properly before the court shows  that the inmates identified by Lee as receiving more favorable treatment were not actually similarly situated to Lee. One inmate's disciplinary proceeding was nol prossed due to a scheduling mistake committed by a correctional officer who was reprimanded for not taking proper action regarding the disciplinary.  The other inmate received behavior citations because his conduct was deemed minor infractions.  Lee presents no evidence to cast doubt on these explanations. Thus, Lee's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.  In addition, Lee has utterly and completely failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains.  Other than Lee's self-serving, conclusory allegation that the defendants violated his equal protection rights regarding imposition of the disciplinary, the record is devoid of any evidence that the defendants acted in an intentionally discriminatory manner. The allegations presented by Lee do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation. *Sweet*, 467 F.3d at 1319;  *E & T Realty*, 830 F.2d at 1114-1115;

*Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6ᵗʰ Cir. 1994). Furthermore, the arbitrary application of administrative rules does not constitute a violation of the Constitution. *E & T Realty*, 830 F.2d at 1114. Lee has therefore failed to set forth appropriate evidence to support a claim of an equal protection violation with respect to the disciplinary action taken against him for inciting to riot. Hence, the defendants are entitled to summary judgment on this equal protection claim.

4. <u>Denial of Due Process</u>. Lee complains the defendants denied him due process in the disciplinary proceedings related to the inciting to riot charge. The punishment imposed for this disciplinary was thirty (30) days loss of store, visitation and telephone privileges and referral for review of his classification level. *Correctional Defendants' Exhibit 1-A to the September 3, 2008 Special Report (Disciplinary Report FLWRC 07-548) - Court Doc. No. 44-1* at 6. Under the circumstances of this case, Lee's due process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being

15

transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486, 115 S.Ct. at 2305 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in

the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, an inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300. Thus, the deprivations imposed upon Lee based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Lee complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.        As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

17

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of canteen, phone and visitation privileges and referral of an inmate for review of his classification level "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is indisputably meritless and, therefore, frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

5. Retaliation. Lee contends the correctional defendants charged him with inciting

18

to riot in retaliation for complaining of unfair treatment in violation of his First Amendment right to freedom of expression.  The defendants, however, maintain they disciplined Lee solely because the manner in which he expressed his opinion, i.e., chanting on the prison yard and inciting other inmates, constituted a violation of institutional rules and regulations, not because they objected to his voicing a complaint regarding inmate treatment.  The affidavits and evidentiary materials submitted by the defendants, including documents contained in Lee's institutional file, support this assertion. *Correctional Defendants' Exhibit 1-A to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Nathan Parrish and Disciplinary Report FLWRC 07-548) - Court Doc. No. 44-1* at 1-7; *Correctional Defendants' Exhibit 1-B to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Levan Thomas) - Court Doc. No. 44-2* at 3-4; *Correctional Defendants' Exhibit 1-C to the September 3, 2008 Special Report (January 31, 2008 Affidavit of Janet Hicks) - Court Doc. No. 44-3* at 2-4.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].  As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254,

2259 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights."  *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"  *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Thus, while inmates retain a constitutional right protected by the First Amendment to freely express a complaint, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained

constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)]....  The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  "In prison, of course, first amendment rights are not absolute.  *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights.  417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).  "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted)....  [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into

21

not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... [three] elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Lee alleges the defendant retaliated against him for expressing a complaint with respect to the treatment of inmates, thus satisfying the first element of his retaliation claim.

*Smith*, 532 F.3d at 1277.   The second element requires Lee to demonstrate that the disciplinary action taken against him for inciting to riot "would likely deter a [prisoner] of ordinary firmness" from expressing a complaint to prison officials.  *Id*.  This "presents an objective standard and a factual inquiry."  *Id*.  Although questionable, the court assumes for purposes of this Recommendation that this standard has been met.  Nevertheless, Lee fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse action of the defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were subjectively motivated to discipline" Lee for expressing a grievance.  *Smith*, 532 F.3d at 1278.  The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977).  This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel.  *Woods*, 60 F.3d at 1166.

23

"[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).  This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse action of the defendants. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576.  Merely alleging the ultimate fact of retaliation, however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the

24

absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d at 1278 n.22.

The defendants deny the allegation of retaliation and argue the adverse action about which Lee complains occurred in an effort to maintain security due to the manner in which Lee expressed himself, chanting and encouraging other inmates to rebel, not because he complained to correctional personnel. Lee offers only his conclusory allegation of ultimate fact that the correctional defendants retaliated against him for expressing himself. This allegation is insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6. The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor. Additionally, the circumstances, when taken as a whole, do not support making such an inference. Thus, Lee's retaliation claim falters on this element. Moreover, even assuming a reasonable fact finder could infer the motivating factor element, it is clear under *Mt. Healthy* that correctional officials would have disciplined Lee regardless of the content of his speech as the manner in which he presented the speech tended to incite other inmates to riot in violation of institutional rules. *Turner*, 482 U.S. 91-92, 102 S.Ct. at 2262-2263. "Objective prison administrators standing in [the defendants'] shoes would assume that [allowing a violation of institutional rules] ...

25

would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." *Smith*, 532 F.3d at 1279.  Consequently, the defendants are entitled to summary judgment on this First Amendment claim as Lee fails to establish by appropriate evidence a causal relationship between the content of his expression and the adverse action taken against him. *Id*. at 1278-1279.

6.  <u>Violation of Institutional Regulations</u>.  Lee argues the correctional defendants violated his constitutional rights when they failed to follow the administrative requirements set forth in the rules and regulations of the Alabama Department of Corrections governing disciplinary proceedings.  The alleged circumvention of departmental rules/regulations does not constitute a violation of an inmate's constitutional rights.  *Sandin v. Conner*, 515 U.S. 472 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987). The defendants are therefore entitled to summary judgment on this claim.

### C.  Medical Treatment

Lee complains the medical defendants deprived him of equal protection and acted with deliberate indifference in providing him medical treatment for recurring pain in his knees.  He further alleges medical personnel employed by both Prison Health Services and Correctional Medical Services denied him access to a doctor in retaliation for his having filed a prior lawsuit against Prison Health Services.

1.  <u>Equal Protection</u>.  Lee makes the conclusory and unsupported allegation that

medical personal denied him equal protection in the provision of medical treatment.  The medical defendants deny this allegation and the medical records filed herein indicate Lee received treatment in accordance with the diagnoses and evaluations of his complaints by various medical professionals.  *Correctional Medical Services Defendants' Exhibit A to Exhibit 2 to the May 21, 2010 Special Report (Medical Records of Calvin Alphonse Lee) - Court Doc. No. 38-2 (pp. 7-51) through Court Doc. No. 38-6*; *Prison Health Services Exhibit B to the February 18, 2008 Special Report (Medical Records of Calvin Alphonse Lee) - Court Doc. No. 15-2.*

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies

that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the medical defendants, Lee bears the burden of producing evidence which would be admissible at trial sufficient to show that the actions of these defendants resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that the plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants. *Id.* at 249.

Lee fails to identify any similarly situated inmate who received more favorable treatment from the medical defendants. Thus, this "equal protection claim fails first because [Lee] has not shown that he was treated differently from other, similarly situated

prisoners." *Sweet*, 467 F.3d at 1319.  In addition, it is clear from the evidentiary materials properly before the court that medical personnel provided treatment to Lee when necessary and indicated.  Consequently, Lee also fails to demonstrate the defendants acted with invidious discrimination and the medical defendants are entitled to summary judgment on this claim.

2. <u>Deliberate Indifference</u>.  Medical personnel may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when they know that the inmate faces "a substantial risk of serious harm" and with such knowledge disregard that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-

29

1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...  *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir.

1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have

> had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, in order to survive summary judgment on his claim of deliberate indifference, Lee is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To evade entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029.

As is relevant to the present complaint, Lee maintains the medical defendants denied him adequate treatment for pain in his knees from October of 2007 until his release from prison in late January of 2008. The medical defendants submitted various evidentiary

materials, including affidavits and copies of Lee's medical records for the time period at issue, which refute Lee's suppositious allegations.   Specifically, the medical records indicate that during the time PHS maintained the contract for inmate medical care Lee submitted a sick call request pertaining to soreness in his right knee on October 17, 2007. *Prison Healthcare Services Defendants' Exhibit B to the February 18, 2008 Special Report - Court Doc. No. 15-2* at 25.   On October 19, 2007 in response to this request, Lee received a prescription for Motrin.   *Id.*   On October 21, 2007, Lee filed another sick call request in which he advised that his right knee pain had not subsided.   *Id.* at 24.   Based on this complaint, medical personnel examined Lee on October 23, 2007.   At this time, Lee stated he "had arthroscope on [his right] knee in 2001...." *Id.* at 23.   The attending nurse observed "no swelling" in Lee's knee but noted Lee expressed difficulty in flexing and extending the knee.   *Id.*   Based on this evaluation, the nurse continued Lee's prescription for Motrin and referred him to a Certified Registered Nurse Practitioner for further evaluation.   *Id.*   This additional evaluation occurred on October 29, 2007, two days prior to termination of the correctional system's contract with PHS *Id.* at 10.   During this period of time, Lee on three occasions failed to appear at pill call to receive his prescribed medication, *id.* at 56-57, and did not submit another sick call request until after the termination of the contract with PHS.

Dr. Paul Corbier, a licensed physician board certified in internal medicine, addresses Lee's allegations relevant to the care provided by CMS as follows:

Correctional Medical Services, Inc. ("CMS") is the company that currently contracts with the Alabama Department of Corrections to provide

medical services to inmates.  CMS has held the contract since November 1, 2007.  Up until October 31, 2007, Prison Health Services, Inc. ("PHS") was the company that held the contract with the Alabama Department of Corrections to provide medical services and treatment to inmates incarcerated in correctional facilities within the State of Alabama.

The Plaintiff, Calvin Alphonse Lee (AIS #152056) was incarcerated at [various correctional facilities from October of 2007] until January 24, 2008, at which time he was released from the Alabama Department of Corrections system.  I am familiar with Mr. Lee and the medical treatment that has been provided to him at the Frank Lee Correctional Center, the Kilby Correctional Facility, and the Draper Correctional Center....

In his complaint, Lee states that he has repeatedly requested medical treatment for knee pain since October 2007.  In October 2007 Lee was incarcerated at the Frank Lee Correctional Center.  He was transferred to the Kilby Correctional Facility on November 19, 2007.  In October 2007, while at the Frank Lee Correctional Center, Lee made no complaints of knee pain nor sought medical treatment for knee pain.  [The attached undisputed medical records demonstrate this failure.]

On November 28, 2007, while at the Kilby Correctional Facility, after Lee complained of bilateral knee pain, x-rays were taken of both of Lee's knees, which showed mild degenerative changes.

* * *

On January 6, 2008, Lee was seen at sick call complaining of pain in both knees.  On January 8, 2008, Lee was seen by Nurse Practitioner, Brad Adams, who evaluated Lee's knees.  Lee complained of bilateral knee pain on that occasion.  Nurse Practitioner Adams noted that there were no significant findings and no swelling or outward objective signs indicative of problems with Lee's knees.  Lee was given Percogesic for knee pain and given a knee brace.

On January 13, 2008, Lee was again seen at sick call for bilateral pain in his knees.  Thereafter, an appointment was made for Lee to be seen by a physician.

I personally saw Lee on January 17, 2008.  Lee informed me that he had previously undergone orthoscopic surgery on his right knee.

Lee informed me on that date that his sentence was due to be completed in one week.  Lee in fact left the Alabama Correctional system on January 24, 2008.

During my evaluation of Lee on January 17, 2008, I performed a range-of-motion test, musculoskeletal examination and reviewed previous x-rays taken of Lee at the Kilby Correctional Facility on November 28, 2007.

34

My diagnosis at that time was mild arthritis of both knees. I ordered a profile for Lee of no standing for long durations of time. I also informed Lee that if he needed to see me on an emergency basis, he could return to sick call at any time.

Lee never returned to sick call nor requested to be seen by me or any other physician subsequent to January 17, 2008. I did not see Lee between January 17, 2008, and his release from the Alabama Correctional system on January 24, 2008.

* * *

I have thoroughly reviewed and am familiar with the complete medical records pertaining to the medical care and treatment of Lee during his incarceration with the Alabama Department of Corrections.

It is my professional opinion, based on my review of the medical records pertaining to Lee's care and treatment, and my medical education, training, and experience, that Lee received medical treatment and care within the standard of care for Board-certified physicians practicing internal medicine within the State of Alabama.

*Correctional Medical System Defendants' Exhibit 2 to the May 21, 2008 Special Report (February 21, 2008 Affidavit of Dr. Paul Corbier) - Court Doc. No. 38-2* at 2-5. Dr. Corbier's synopsis of the treatment provided to Lee is supported by the certified medical records filed in this case and there is nothing before the court which undermines the validity of these records. The medical records demonstrate that during the period of time made the basis of this complaint medical personnel examined Lee, thoroughly evaluated his complaints, prescribed various medications and provided treatment for his knee pain in accordance with their professional judgment. A free-world radiologist reviewed the November 28, 2007 x-ray images taken of the plaintiff's knees and noted "no fracture, dislocation, or subluxation. There is no joint effusion. Alignment is excellent. Bone density is normal and uniform. There is mild degenerative change consistent with age but

no unusual arthropathy.  The soft tissue planes are overpenetrated without radiopaque foreign body.  Degenerative change is slightly worse on the left than the right." *Correctional Medical System Defendants' Exhibit 2d to the May 21, 2008 Special Report (Final X-Ray Report) - Court Doc. No. 38-5* at 1.

Lee fails to present sufficient evidence to create a genuine dispute of material fact with respect to his claim that the defendants acted with deliberate indifference to his medical needs.  Specifically, the record does not indicate that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Lee, that the defendants actually drew this inference and thereafter ignored the risk.  Lee has therefore failed to establish each of the requisite elements of his deliberate indifference claim.  *Carter*, 352 F.3d at 1350.  Consequently, the defendants are entitled to summary judgment.

3. Retaliation.[4]  Lee states he "believe[s] [medical personnel denied him appropriate treatment] in retaliation for filing a previous 1983 complaint against ... Prison Health Services." *Plaintiff's Complaint - Court Doc. No. 1* at 7.  The medical defendants deny this allegation and maintain Lee's previous lawsuit had no impact on the medical treatment provided to Lee.  These defendants further maintain they evaluated Lee's complaints and provided him with appropriate and necessary treatment in accordance with their professional judgment.  The affidavits and evidentiary materials submitted by the

---

[4]The standard of review for a retaliation claim is set forth *infra* at pp. 18-24.

36

defendants, including documents contained in Lee's medical file, support this assertion.

Lee alleges the medical defendants retaliated against him for exercising his right of access to the court by filing a previous lawsuit challenging the constitutionality of medical treatment provided to him, thus satisfying the first element of his retaliation claim. *Smith*, 532 F.3d at 1277. The second element of a retaliation claim requires Lee to demonstrate that the medical treatment provided to him "would likely deter a [prisoner] of ordinary firmness" from exercising his right of access to the courts. *Id*. This "presents an objective standard and a factual inquiry." *Id*. Under the circumstances of this case, the presence of this element is tenuous, at best, but the court assumes *arguendo* that this element has been established. Nevertheless, Lee fails to satisfy the third requisite element of a retaliation claim - a causal connection between his filing of a prior lawsuit and an adverse action by the medical defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were *subjectively motivated* to" undertake the challenged actions against Lee for exercising his right of access to the courts. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then

37

"the burden of production shifts to the defendant.  If the defendants can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

As previously noted, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166.  "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendants.  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576.  Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at

1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct."  *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.'  *Thaddeus-X*, 175 F.3d at 388 n.4...."  *Smith*, 532 F.3d at 1278 n.22.

Lee makes only a conclusory and speculative assertion that medical personnel denied him adequate treatment because he filed a previous lawsuit.  Lee has submitted no evidence that his prior lawsuit constituted a factor, much less was the motivating factor, in any of the defendants' decisions regarding the medical treatment provided to him for pain in his knees.  The defendants adamantly deny the prior lawsuit played any part in the medical treatment provided to Lee and assert all decisions regarding his treatment were based on their assessment of his condition.

Lee offerrs only his conclusory allegation of ultimate fact that the defendants retaliated against him for exercising his right of access to the courts.  This allegation is insufficient to defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d

at 1564, n.6.  The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor.  Additionally, the circumstances, when taken as a whole, do not support making such an inference and Lee's retaliation claim with respect to the medical treatment provided by the defendants therefore falters on this element.  Furthermore, there is no evidence before the court to indicate that Lee's previous lawsuit in any way affected the medical treatment provided to Lee by the defendants.  Thus, Lee likewise fails to establish by appropriate evidence a causal relationship between the alleged protected activity and an adverse action taken against him.  The defendants are therefore entitled to summary judgment on the retaliation claim related to the provision of medical treatment.  *Id*. at 1278-1279.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **February 4, 2011,** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of January, 2011.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

41